**JEDATT, INC. d/b/a Home Town Foods, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Food and Nutrition Service, Defendant.**

Civ. No. 79–70514.

United States District Court,
E. D. Michigan, S. D.

March 19, 1980.

Paul Vincent, Detroit, Mich., for plaintiff.

Hayward Draper, Asst. U. S. Atty., Detroit, Mich., for defendant.

## OPINION

COHN, District Judge.

This is a proceeding to review a one year suspension of plaintiff from the food stamp program for violation of the Food Stamp Act of 1977; Pub.L.No.95–113, Title XIII, § 1301; 91 Stat. 961; 7 U.S.C. § 2011 *et seq.*[1]

## I.

Plaintiff owns and operates a supermarket in the City of Detroit authorized to accept food stamps in payment for the food items it sells, 7 U.S.C. § 2018. There is no essential dispute about the facts leading to the suspension.[2]

---

1. At the beginning of trial the parties agreed the Court would take testimony on the question of whether plaintiff violated the statute, after which it would hear argument on the Court's authority to review the sanction of a one year suspension. Testimony has been concluded.

2. The thrust of the testimony plaintiff offered was to the effect its employees were fully fa-

miliar with the food stamp program, instructed to follow its requirements and, therefore, the violations could not have occurred. Yet, it was clear from cross-examination of one of the clerks who had been with plaintiff for several years she was not aware which items were prohibited.

In July of 1977 by letter and in accordance with administrative practice, the Food and Nutrition Service of the Department of Agriculture cautioned plaintiff as to the importance of observing the requirements of the food stamp program and the possibility of disqualification. Shortly before the letter a representative of the Service personally talked to plaintiff's owner about possible violations and the consequences.[3]

Following the letter the Detroit office of the Service requested a compliance review based on a concern over excessive redemptions. Compliance review is a procedure by which the Service attempts to determine whether a store in the program is following the law. The procedure involves "shopping" the store over several days under carefully controlled conditions to see whether it sells non-food items for food stamps. In this case on three different days in October, 1977 two different clerks sold to two different persons, six sales in all, in exchange for food stamps, non-food items that are commonly understood to be ineligible for sale for food stamps and are prohibited by 7 U.S.C. § 2013 and 7 C.F.R. § 278.2 (1979)[4] and also gave cash change for food stamp sales.[5]

The six sales were made to persons known as aides; that is, persons hired on an hourly basis by Service investigators to shop a store. These aides were given a fixed amount of food stamps, went into the store, purchased a number of eligible and ineligible items, paid for them in food stamps and thereafter immediately reported to the investigators with their purchases and change. The merchandise purchased was then carefully checked and recorded.[6]

The results of the compliance review were transmitted to the appropriate Service officials and thereafter an administrative review was conducted first by the regional office and then by the national office culminating in the suspension from the program for one year, 7 U.S.C. § 2021. Plaintiff was notified of the suspension on February 7, 1979 and promptly instituted this proceeding to obtain review, 7 U.S.C. § 2023.[7] During the pendency of these proceedings suspension has been stayed.

During the course of the administrative review plaintiff was advised in detail of the purchases and given an opportunity to respond, 7 U.S.C. § 2023. Plaintiff's comments were carefully considered. Initial notice of suspension was given plaintiff in August of 1978. Plaintiff was then given a further opportunity to argue against the findings and proposed sanction. The response included affidavits and an informal meeting with the Service review officer, all to no avail. Each of plaintiff's contentions (with an exception noted below) were answered in detail in the letter notifying it of the suspension.

---

3. The visit and follow-up letter was prompted by a concern on the part of the Service that the dollar amount of food stamps being redeemed by plaintiff was out of line with other stores comparably situated.

4. Citations are to 7 C.F.R. § 271.1 *et seq.* (1979). The regulations prior to January 1, 1979 used a different numbering system. The differences in text are generally not significant.

5. On October 25, the sales included bath soap, bathroom tissue and kitchen supplies. On October 26, the sales included similar items and cigarettes. On October 28, the same sort of items were again sold, including cigarettes. Of the six sales involved three included cigarettes.

6. Two investigators and one aide testified. The documentation relating to the sales was introduced into evidence. Under F.R.Evid. 803(8) and 804(5) the Court admitted the report of the aide who did not testify. There is no question of the trustworthiness of the testimony and exhibits relating to the sales.

Each sale of an ineligible item constituted a violation of the statute as did the giving of change at that time. There is no question but that the owner is responsible for the action of its clerks. *Marbro Foods, Inc. v. United States*, 293 F.Supp. 754 (N.D.Ill.1968).

7. 7 U.S.C. § 2023 provides for *de novo* review. Under this section it has been held that the administrative action has a "presumption of validity" and therefore the burden is on plaintiff, *Redmond v. United States*, 507 F.2d 1007 (5th Cir. 1975). Whatever the standard and whoever has the burden the Court is satisfied the violations occurred and the administrative finding fully justified.

The suspension was based on the Service determination that a store policy to sell non-food items had been established because of the number of clerks involved, the nature of items sold, as well as the number of transactions. Given the prior notice, in accordance with Service guidelines,[8] a sanction of one year was deemed appropriate.[9]

## II.

Plaintiff opposes the one year suspension claiming it is too severe under the circumstances and asks the Court to set it aside or reduce it. As authority for its argument it says:

1. A District Court has authority to review the sanctions imposed by the Service, particularly where the claim is made that the sanction is "unwarranted in law," citing *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973).

2. The Service relies on guidelines required to be published in the Federal Register. Since they were not published the Service may not rely on them, citing 7 U.S.C. § 2013(c) and 5 U.S.C. § 552(a)(1)D.

The government asserts the Court has no authority to review a sanction imposed by the Service and that there was no obligation to publish the guidelines.

## III.

The statutory and regulatory scheme governing the food stamp program is rather complex and may be briefly described as follows:

7 U.S.C. § 2021 provides that a store may be suspended from participation for a period of time, or fined under certain circumstances, for violation of the statute. The period of suspension is to be determined by regulations promulgated by the Secretary of Agriculture.[10]

7 U.S.C. § 2023 provides for review *de novo* in a United States District Court of the administrative proceedings.[11]

Prior to January 1, 1979, 7 C.F.R. § 272.6 (1977) provided that a store failing to comply could be suspended for a reasonable period of time not to exceed three years. While the regulation provided in detail for the manner of review, 7 C.F.R. § 272.8 (1977) and 7 C.F.R. Part 273 (1977), the way in which the length of the sanction was determined not further elaborated on. The Service, to assure uniformity in the imposition of sanctions, published as part of its manual what it denominated as FNS GUIDELINES (Instruction 744–9 (1970)) which contained detailed criteria to be used

---

**8.** Prior to January 1, 1979 the guidelines were contained in the Service's manual. See text, *infra*. Since January 1, 1979 they have been part of the regulations, 7 C.F.R. § 278.6 (1979).

**9.** *Id.* The chronology of the administrative proceedings is as follows:

May 3, 1978 Notice of violations, 7 C.F.R. § 278.6(b) (1979).

May 15, 1978 Plaintiff replied in person.

August 7, 1978 Notice of suspension for one year, 7 C.F.R. § 278.6(c) (1979).

August 11, 1978 Plaintiff requested review, 7 C.F.R. § 276.6(j) and 7 C.F.R. § 279.5 *et seq.* (1979).

August 16, 1978 Plaintiff supplemented its request for review.

September 6, 1978 Plaintiff further supplemented its request for review claiming (i) suspension for one year was too harsh, (ii) suspension would work a hardship on food stamp users, and submitted affidavits in mitigation.

January 18, 1979 Plaintiff's attorney (having met in person with the Food Stamp Review Officer), wrote arguing the adverse financial effect suspension would have on plaintiff, suspension would work a hardship on food stamp users and suspension was not a reasonable penalty.

February 7, 1979 Determination that the suspension be sustained. 7 C.F.R. § 279.8 (1979).

**10.** 7 U.S.C. § 2021 was amended in 1977 to add the fine provision. Its purpose was to allow an alternative penalty if the Secretary of Agriculture determined that suspension would cause hardship to food stamp households. The legislative history indicates that it should normally be imposed instead of suspension. H.R.Rep. No.95–464, 95th Cong., 1st Sess. 2, *reprinted in* [1977] U.S.Code Cong. & Admin.News, p. 2326.

**11.** The suit in the United States District Court is by trial *de novo* by the court in which the court determines the validity of the questioned administrative actions in issue, 7 U.S.C. § 2023.

in making a determination.[12] A one year suspension was provided for where the evidence clearly indicated that the store as a matter of policy was engaged in the sale of major non-grocery items and Service personnel had taken significant action to prevent violations.

The Midwest Regional Office of the Service, to explain the FNS GUIDELINES and further refine them for use by its personnel, issued what it called a Supplemental Policy Memorandum No. 1 to FNS(FS) Instruction 744–9, in which it elaborated on the terms "store policy" and "major non-grocery items." [13]

Since January 1, 1979 the regulations, 7 C.F.R. § 278.6 (1979) have specifically set forth the criteria to be used in determining the length of a suspension. Likewise, the new regulations, consistent with the 1977 amendments, also provide for a civil money penalty up to $5,000.00 in lieu of suspension under certain circumstances and set forth the basis for making a determination of whether to impose a sanction in lieu of a suspension.[14]

### IV.

Plaintiff's reliance on *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973) is misplaced. *Butz* held that when the Secretary of Agriculture made " 'an allowable judgment in [his] choice of remedy' " 411 U.S. 182, 189, 93 S.Ct. 1455, 1459, 36 L.Ed.2d 142

no review of the sanction was authorized. A decision "unwarranted in law" would be one which exceeds the statutory limitations. Here, 7 U.S.C. § 2021 clearly allows for suspension up to three years.

In *Martin v. United States*, 459 F.2d 300 (6th Cir. 1972), *cert. denied*, 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972), the Sixth Circuit definitively interpreted the language of 7 U.S.C. § 2023 to limit this Court's right to review the length of a suspension.

"The statute authorizes a review only on the merits of the case, not on the period of disqualification."

". . . The reviewing court is authorized to 'determine the validity of the questioned administrative action in issue'. The Court did make that determination by holding that the stores were disqualified from participation in the Food Stamp Program because of the admitted repeated violations. *Upon making that determination the jurisdiction of the Court ended.*" (emphasis added).

. . . . .

"In the Act, no authority was conferred on the District Court to change the period of suspension ordered by the Secretary, or to impose new sanctions." (footnote omitted).[15]

459 F.2d 300, 301–02.

This interpretation was reinforced by the Sixth Circuit's affirmance without opinion,

---

**12.** It is this part of the manual which plaintiff claims should have been published in the Federal Register.

**13.** This memorandum was no more than an internal office document. The operative document for purposes of establishing the sanction was the GUIDELINES.

**14.** Under 7 C.F.R. Part 279 (1979) the final decision is made by a Food Stamp Review Officer designated by the Administrator of the Service who in turn is a designee of the Assistant Secretary For Food and Consumer Services who in turn is a designee of the Secretary of Agriculture, the officer designated by Congress to administer the program. 7 U.S.C. § 2013; 7 C.F.R. § 2.3 (1979); 7 C.F.R. § 2.15 (1979); 7 C.F.R. § 2.93(a); 7 C.F.R. § 271.3 (1979). Responsibility for sanctions is divided between

regional offices and the national office. 7 C.F.R. § 278.6 (1979) and 7 C.F.R. Part 279 (1979).

**15.** A dissent by now Chief Judge Edwards, argued 459 F.2d 300, 302, *de novo*, meant the District Court possessed all the power the agency possessed including the power to enter a disposition different from that originally entered, and the Secretary should seek from Congress an amendment to express his view. The House Agricultural Committee, in its report on the 1977 amendment, made it clear it agreed with the majority in *Martin*:

The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with regulations (and the regulations permit disqualification

516 F.2d 901 (6th Cir. 1975), of the decision in *American National Foods, Inc. v. United States Dept. of Agriculture*, 381 F.Supp. 1021 (M.D.Tenn.1974). Courts in the majority of other Circuits have followed *Martin:* See, *Studt v. United States*, 607 F.2d 1216 (8th Cir. 1979); *Nowicki v. United States*, 536 F.2d 1171 (7th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977); *Bush v. United States*, 473 F.Supp. 715 (E.D.Pa.1979); *M. R. Damiani Corp. v. U. S. Dept. of Agriculture*, 421 F.Supp. 697 (S.D.N.Y.1976); *Berger v. United States*, 407 F.Supp. 312 (D.C.R.I.1976); *Smith v. United States*, 392 F.Supp. 1116 (W.D.La. 1975); *Marcus v. U. S. Dept. of Agriculture*, 364 F.Supp. 374 (E.D.Pa.1973); *Miller v. U. S. Dept. of Agriculture*, 345 F.Supp. 1131 (W.D.Pa.1972).

### V.

The Court need not answer plaintiff's second contention that the Service is relying on guidelines which the law requires be published in the Federal Register.

As previously mentioned the Service has incorporated in its regulations, 7 C.F.R. § 278.6 (1979), much of the detail of what was formerly in the FNS GUIDELINES and which had not been published in the Federal Register. Included in the new regulations are the criteria for imposing a fine

in lieu of disqualification and how such determination is to be arrived at. 7 C.F.R. § 278.6(g) & (h) (1979) and 7 C.F.R. § 279.-8(c) (1979).

With the criteria for determination of the sanctions a part of the regulations, the objection based on lack of publication in the Federal Register is now moot. While the government vigorously argues that the Service's determination is to be judged under the regulations as they existed prior to January 1, 1979 [16] the formal determination notice cited the new regulations, i. e., 7 C.F.R. § 279.10 (1979) rather than 7 C.F.R. § 273.10 (1978) in advising plaintiff of its right to judicial review.

The criteria for a one year suspension in the FNS GUIDELINES (pre January 1, 1979) and in the 7 C.F.R. § 278.6(e) (post January 1, 1979) are substantially the same.

### VII.

■ While not necessary to the Court's determination, and in fact beyond its jurisdiction, the Court finds that the one year disqualification was appropriate given the nature of the violations by plaintiff. Based on the evidence the Court finds that it was plaintiff's policy to sell conspicuous nonfood items, cartons of cigarettes for example, in exchange for food coupons and that

for a reasonable period up to three years) pursuant to section 12 of the bill, the Committee does not intend that, in the trial *de novo* in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. *See, Goodman v. United States*, 518 F.2d 505 (5th Cir. 1975) and *Cross v. United States*, 512 F.2d 1212 (4th Cir. 1975 (en banc). *But see, Martin v. United States*, 459 F.2d 300 (6th Cir.), *cert. denied*, 409 U.S. 878 [93 S.Ct. 129, 34 L.Ed.2d 131] (1972) and *Save More of Gary, Inc. v. United States*, 442 F.2d 36 (7th Cir.), *cert. dismissed*, 404 U.S. 987 [92 S.Ct. 535, 30 L.Ed.2d 549] (1971). The trial *de novo* as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of highly

discretionary a sentence of disqualification is not.
H.R.Rep.No.95–464, 95th Cong., 1st Sess. 2, *reprinted in* [1977] U.S.Code Cong. & Admin. News, pp. 2326–2327.

16. The statute was amended effective September 29, 1977. The new regulations became effective September 19, 1978. § 1303(a) of Pub.L. 95–113, 91 Stat. 979, approved September 29, 1977, provided that the Secretary of Agriculture was to implement the new law as expeditiously as possible and the provisions of the Food Stamp Act of 1964, which are relevant to current regulations, should remain in effect until new regulations under the 1977 Act became effective. Under the authority of *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), it would appear the new law and new regulations govern.

plaintiff was warned about the possibility of violations. 7 C.F.R. § 278.6(e)(2) (1979).

This does not, in the Court's judgment, however, end the matter. The legislative history of the Food Stamp Act of 1977 indicates a congressional intent that a fine should normally be imposed instead of disqualification.

> To deal with retailer abuse, the Committee bill calls for the addition of civil penalties of up to $5,000 as an alternative punishment to outright program disqualification or suspension, and, indeed, one that should normally be imposed instead of disqualification (section 12). This would benefit all three major participants in the program—consumers, businesses and the Department itself. Consumers would not lose the convenience of nearby stores during a period of suspension. Businesses would not face the prospect of losing up to half of their business volume during a suspension period (because food stamp customers buy both eligible and non-eligible items, a store whose volume is only, say, 25 percent in food stamp purchases may easily have total sales to food stamp users at the 50 percent level). And the Department would not face the difficult choice between a very lenient punishment (a reprimand) and a very severe one (suspension) in those cases where something between those two is far more appropriate. Retail stores should not be disqualified simply because an owner, operator, employee, or member is a food stamp recipient in the absence of fraud or other illegal conduct.

H.R.Rep.No.95–464, 95th Cong., 1st Sess. 2, *reprinted in* [1977], U.S.Code Cong. & Admin.News at p. 2326.

The administrative record shows that plaintiff urged consideration of a fine because of the financial impact on plaintiff and the hardship on food stamp users if plaintiff was disqualified.[17]

The Service did not respond to this argument except to say in its final determination of February 7, 1979:

> It is recognized that economic hardship, to some degree, is a likely consequence whenever a store is temporarily disqualified. However, I must also consider the interests of the program and fairness and equity, not only to competing stores, but also to those participating retailers who are complying fully with program regulations. We must also be fair to those retailers who have been disqualified from the program in the past for similar violations.
>
> You further state that hardship will result to your client's food stamp customers who will be unable to benefit from the services your client provides. This, too, is recognized as a possible consequence of disqualification. However, if the program is to operate to the advantage of those participating families, it is essential that program requirements be observed.

This response, in the Court's judgment, was insufficient and does not represent the balancing envisioned by the Congress when it made available a fine as an alternative sanction. The Service was operating under the new regulations at the time it made its final determination. The Court recognizes that the initial determination by the regional office, 7 C.F.R. § 278.6(d) (1979), was prior to January 1, 1979, but the final determination by the Food Stamp Review Officer was subsequent to January 1, 1979. The regulations contemplate both (i. e. the Regional Office and the National Office) be involved in any determination that a fine be imposed, 7 C.F.R. § 279.8(c) (1979). The government argues that the record shows a fine would be inappropriate in the circumstances here, particularly since there is evidence of other stores in the neighborhood available to users of food stamps. Since the Court may not review the sanctions imposed, the matter should be remanded to the Service for reconsideration in light of

---

17. Plaintiff, in its several briefs, argues this position. The government objected claiming it was not set forth in the pre-trial statement;

F.R.Civ.P. 16. The omission is not fatal. *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176 (5th Cir. 1979).

the options open to it. *Green v. Cashman,* 605 F.2d 945, 947 (6th Cir. 1979).[18, 19]

So ordered.

---

18. 7 C.F.R. § 278.6(g) established the criteria for a fine in lieu of sanctions, i. e., where the store subjected to the sanction is selling a substantial variety of staple food items and its disqualification would cause hardship because no other authorized store in the area is selling as large a variety at comparable prices. The intimations from the record are that there are other stores in the area available. If so, the administrative record should show it.

19. *Martin v. United States,* 459 F.2d 300 (6th Cir. 1972), *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972) was decided when the sole penalty available to the Secretary of Agriculture was suspension. Given the broader scope of penalty options opened by 7 U.S.C. § 2021, i. e., fine or sanctions, and the consequent increase in discretion available, it is not clear that *de novo* review should still be so restricted.