**Saint H. PRUNTY, dba Saint's Carry Out, Plaintiff,**

v.

**U.S. DEPT. OF AGRICULTURE, FOOD & NUTRITION SERVICE, Defendant.**

No. C-3-81-251.

United States District Court, S.D. Ohio, W.D.

Oct. 31, 1983.

John M. Cloud, Dayton, Ohio, for plaintiff.

James A. Wilson, Asst. U.S. Atty., Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO BE ENTERED FOR DEFENDANT; TERMINATION ENTRY

RICE, District Judge.

Plaintiff, Saint H. Prunty, dba Saint's Carry Out (Saint's), challenges a one year disqualification from participation in the government's Food Stamp Program pursuant to 7 U.S.C. § 2021. Plaintiff's disqualification resulted from the sale of ineligible items on five separate occasions. (Parties' Stipulations ¶ 9). Having received notification of disqualification by way of a letter dated November 5, 1980, Plaintiff sought and obtained review of this determination by the Administrative Review Staff of the Food & Nutrition Service which affirmed the original penalty imposed. (Joint Exhibit I, pp. 44–60).

Plaintiff subsequently filed this action pursuant to 7 U.S.C. § 2023 which provides for review *de novo* in a United States District Court of the "validity of the administrative action in issue."

Before the Court for determination are cross motions for summary judgment wherein the following issues are raised:

1. Whether, and to what extent, this Court has jurisdiction to make a determination on the issues raised in this proceeding;

2. Whether, as a matter of law, the one year disqualification is invalid and excessive;

3. Whether the Food Stamp Review Officer failed to give sufficient consideration to Plaintiff's request for imposition of a fine as opposed to a one year disqualification.

I. JURISDICTION

Defendant, the U.S. Department of Agriculture, Food & Nutrition Service (FNS or Agency), argues that it is entitled to a grant of summary judgment in its favor on

the ground that this Court does not have jurisdiction to consider the contentions raised by the Plaintiff in his complaint.

There does not appear to be total concurrence among the circuits on the extent to which the district courts may properly engage in judicial review pursuant to 7 U.S.C. § 2023. The majority of the courts have held that the statutory language permits judicial review of the validity of the administrative action taken, i.e. whether the agency was acting within the bounds established by the applicable statutory and regulatory provisions. These courts have also held that the statute permits judicial review of the exercise of administrative judgment in imposing a particular penalty. *Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir.1980); *Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir.1978); *Nowicki v. United States,* 536 F.2d 1171, 1177–78 (7th Cir. 1976); *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977); *Goodman v. United States,* 518 F.2d 505, 511–12 (5th Cir.1975); *Cross v. United States,* 512 F.2d 1212, 1217–18 (4th Cir.1975) (en banc).

The Sixth Circuit, however, appears to have taken the position that a court may *only* review the validity of the agency's action, but may not modify the sanction deemed appropriate by the agency, once it has been determined that the administrative record supports a finding that the violation occurred and the sanction is within the agency's discretion as defined in the statute and corresponding regulations. *Martin v. United States,* 459 F.2d 300, 302 (6th Cir.1972); *cert. denied,* 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *see also, American National Foods, Inc. v. United States Department of Agriculture,* 381 F.Supp. 1021 (M.D.Tenn.1974), affirmed without opinion, 516 F.2d 901 (6th Cir.1975); *Cass Corridor Food Coop. v. United States,* 512 F.Supp. 925 (E.D.Mich. 1981).

Defendant, the United States Department of Agriculture, Food & Nutrition Service (FNS) argues that the Sixth Circuit's holding in *Martin* precludes this Court from reviewing the actions of the agency as the parties have stipulated the only matter properly reviewable by this Court, i.e., whether the violations prompting the sanctions in fact occurred.

However, Plaintiff's first argument is *not* that the agency, although acting within its discretionary authority, abused that discretion by imposing too severe of a penalty. Rather, the Plaintiff's argument is that, in this instance, FNS was not authorized by its governing regulations to impose a one-year disqualification as a sanction. Thus, the question before the Court is not whether the agency properly exercised its discretion, but rather, whether the agency was acting outside the scope of its authority, thus rendering its action invalid. The Sixth Circuit's holding in *Martin* does not preclude the Court from examining this question.

Moreover, Plaintiff's second argument does not seek to have the Court alter the sanction imposed by FNS, which action the *Martin* decision places outside the scope of the Court's authority. Instead, Plaintiff in its second contention, urges the Court to remand this matter to FNS for further consideration of whether the facts warrant imposition of a fine as opposed to a one-year disqualification. Should the Court agree with Plaintiff that the administrative record does not reflect adequate consideration of the alternative sanction of a civil penalty, remanding the matter to the agency for reconsideration would not be precluded by the holding in *Martin. Jedatt v. U.S. Department of Agriculture,* 488 F.Supp. 261 (E.D.Mich.1980).

■ The Court concludes, therefore, that it has jurisdiction to consider the merits of the contentions raised by Plaintiff in its complaint and the parties' cross motions for summary judgment.

## II. THE VALIDITY OF THE AGENCY'S ACTION

The basic thrust of Plaintiff's arguments focuses on the language of the regulations found in 7 C.F.R. § 278.6(e)(2), as those regulations read when they became effec-

tive on January 1, 1979.[1] These regulations provide the criteria that must be met in imposing various penalties on stores that have violated the Food Stamp Program provisions found in 7 U.S.C. §§ 2011, *et seq.* With respect to the imposition of a one-year penalty these regulations provide:

(2) Disqualify the firm for 1 year if:

(i) the evidence shows that: (A) It is the firm's policy to sell expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices, or

(B) The firm bought coupons at discount, and

(ii) The firm was warned about the possibility that violations were occurring and of the possible consequences of violating the regulations. The regional office may disqualify a firm for 1 year, even though the firm was not warned about the possibility that violations were occurring, if the regional office finds that the firm has committed unusually serious violations of the kind described in (i)(A) or (B) of this subparagraph.

(iii) The evidence shows that the firm's coupon redemptions for a specified period of time exceed its food sales for the same period of time.

Plaintiff contends that regulation clearly calls for the agency to make the following three determinations before imposing a one-year disqualification: 1. the store has a policy of selling the items in (i) (or the store bought coupons at discount); 2. the store has been warned in accordance with (ii); *and* 3. the store's coupon redemptions exceed food sales during a specified time as described in (iii). Any other reading of the regulation's plain language, according to Plaintiff, would be tortured. Thus, because the administrative record is devoid of any finding that Saint's redemptions have ever exceeded its food sales, FNS was not authorized to even consider imposition of a one-year penalty.

Though the disputed regulation is rather inartfully drafted, the Court does not agree that there is but one logical interpretation to be given its language. To the contrary, the Court neither feels that Plaintiff's reading is compelled, nor that it is accurate. A reading of the prior internal guidelines,[2] and explanatory memoranda[3] generated by FNS prior to the publishing of its regulation in 1979, demonstrates that the agency had previously always grouped store violation cases into two categories. One category of violations, referred to as Investigative Cases, encompassed infractions that came to light as a result of on-site investigating and monitoring by the agency of a store's sale practices to identify specified impermissible sales or types of transactions involving food stamps. The agency guidelines provided the agency staff with various criteria based upon the seriousness of the store's violations, which were designed to both limit and inform the exercise of the staff's discretion in meting out penalties which ranged from 30 days to 3 years.

---

**1.** 7 C.F.R. § 278.6 was amended in 1978 and again in 1982. Presently, Section 278.6(e)(2) would permit FNS to disqualify a store for five years for the very same violations which only triggered a one year disqualification under the 1979 regulations. The Court notes, however, that as the new regulatory provisions would result in the possible imposition of a substantially more severe penalty, the retrospective application of the new regulation would be manifestly unfair to Plaintiff who could not, as of the date of its violations, have anticipated imposition of such a harsh penalty. *See, Bradley v. Richmond School Board,* 416 U.S. 696, 716–724, 94 S.Ct. 2006, 2018–2022, 40 L.Ed.2d 476 (1974); *Cass Corridor Food Coop. v. United States,* 512 F.Supp. 925, 931 (1981). Moreover, all deci-

sions of FNS were made pursuant to the 1977 Food Stamp Act and the 1979 regulations and the questions before the Court focus on whether the agency's actions complied with the then existing statute and regulations, not those subsequently promulgated.

**2.** FNS (FS) Instruction 744-9 (March 13, 1970), "Food Stamp Program Criteria for Final Determinations in OIG [Office of the Inspector General] Investigative Cases"; FNS (FS) Instruction 744-18 Rev. 1, "Disqualification Based on Redemptions Exceeding Eligible Food Sales."

**3.** Supplemental Policy Memorandum No. 1 to FNS (FS) Instruction 744-9.

The second category of violations addressed by the agency were unmasked by reviewing the regular statistical reporting requirements placed on stores participating in the Food Stamp Program. If it was determined that a store's rate of redeeming food stamps exceeded its sale of eligible food items and no acceptable reason or explanation for this disparity was forthcoming from the store, then the agency would impose a one or possibly three year disqualification on the store. Excessive redemptions were treated by FNS as evidence of widespread violations of the Food Stamp Program requirements. FNS (FS) Instruction 744–18, p. 12, ¶ A. Once the unexplained imbalance in statistics was identified, there was no need to determine the specific type or frequency of impermissible sales and transactions, as the disproportionate redemption rate served as conclusive proof that the store had been engaging in substantial Food Stamp Program violations. Thus, FNS considered such a statistical discrepancy to warrant at least a one year violation or, for second offenders, a three year disqualification, without regard to the underlying violations that lead to the excessive redemptions.

The Court does not dispute the Plaintiff's contention that as of January 1, 1979, the effective date of 7 C.F.R. § 278.6, the language of the regulation clearly superseded the prior internal guidelines as the relevant criteria directing FNS action. These prior guidelines do, however, shed some light on agency intent in drafting the superseding regulation. Moreover, further evidence of agency intent can be garnered from the internal guidelines published subsequent to the effective date of 7 C.F.R. § 278.6.

FNS Instruction 744–9. This internal publication continued the separate treatment of Investigative Cases and the itemization of the criteria that should be considered in determining the store's penalty.

This same distinction in agency treatment of widespread violations evidenced by excessive redemption rates reflected in reported statistics and specifically identified infractions coming to light through investigations, has been carried through into the present section 278.6, as amended on December 17, 1982.[4] Thus, the various internal guidelines and subsequent regulations reflect a consistent agency treatment of two methods by which food stamp program violators are unmasked. Notwithstanding not only the consistent, but also the highly logical distinction the agency has always made, Plaintiff would have this Court read the 1979 regulations as prohibiting the imposition of a one year penalty unless FNS found not only that the store had a policy of selling particular types of ineligible items, and that the store had received prior instruction and warning from FNS, but *also* that the store redemptions exceeded its sales of eligible items for a specified period of time. If all three findings must be made to impose a one year disqualification, then if FNS identified a store which could not proffer a suitable explanation for its redemption exceeding its sales, FNS would then have to initiate an investigation to determine if the same store had previously been warned about infractions *and* had a policy of selling "expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged

---

**4.** 7 C.F.R. § 278.6(e)(2) provides in relevant part:

(e) *Penalties.* FNS shall take action as follows against any firm determined to have violated the Act or regulations. For the purposes of assigning a period of disqualification, a warning letter shall not be considered to be a sanction. A civil money penalty and a disqualification shall be considered a sanction for such purposes. The FNS regional office shall:

* * * * * *

(2) Disqualify the firm for 5 years if it is to be the firm's first sanction, the firm had been previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations, and the evidence shows that:

(i) It is the firm's practice to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages in exchange for food coupons; or

(ii) The firm's coupon redemptions for a specified period of time exceed its food sales for the same period of time.

in such practices." 7 C.F.R. Section 278.-6(e)(2)(i) and (ii) (1977). The Court cannot assume that the agency intended to impose such a redundant and unnecessary burden on itself unless, of course such is the only logical manner in which the regulation can be read.

The Court finds, however, that section 278.6(e)(2) can be read quite logically, and without torturing the plain language of the regulation, as carrying forward the agency distinction between investigative cases and broader all encompassing infractions revealed in statistical reporting of excessive redemptions. Subsection (e)(2)(i) states that a one year penalty may be imposed if "the evidence shows" a store policy concerning sale of certain ineligible items as well as evidence of specific instances of such sales and, according to (e)(2)(ii), the store has received prior warning or the violation is unusually serious. In the alternative, a one year violation may be imposed pursuant to subsection (e)(2)(iii) if "the evidence shows" excessive redemptions. The insertion of a period at the end of subsection (e)(2)(ii), the repetition of the phrase "the evidence shows" at the beginning of (e)(2)(iii) and the absence of a conjunctive between subsections (ii) and (iii), logically leads to the conclusion that subsection (iii) was intended to set forth a separate and distinct infraction for which a one year violation may be imposed and was not intended to set forth a third criteria that must always be found prior to the agency's imposing a one year disqualification.[5]

■ The Court concludes, therefore, that FNS did not act outside its authority, as defined by 7 C.F.R. § 278.6, when it imposed a one year disqualification on Saint's, based upon the agency's investigation that revealed a store policy and practices of the sale of ineligibles as described in subsection (e)(2)(i) and a finding that prior warnings had been given to Saint's in accordance with (e)(2)(ii).

## III. CONSIDERATION OF IMPOSITION OF A CIVIL PENALTY

The original Food Stamp Act, passed in 1964, was revised by the Food Stamp Act of 1977 which added an alternative civil penalty that FNS could impose on violating stores in place of disqualifying the store from participating in the Food Stamp Program.[6] As amended, 7 U.S.C. § 2021

---

**5.** The Court notes that the Food Stamp Review Officer in his administrative review of Saint's one year disqualification indicated that in his opinion 7 C.F.R. 278.6(e)(2) set forth three separate conditions, any one of which could result in a store's one year disqualification. (Joint Exhibit I, p. 59). This interpretation conflicts with the agency's prior and subsequent interpretation of the regulation, as well as with the plain meaning of the regulation, all of which demonstrate that the one year disqualification could only be imposed if a store had a policy of selling certain ineligible items (or bought coupons at discount) and had received prior warnings. Subsections (i) and (ii) are joined by a conjunctive and the language of subsection (ii) refers back to subsection (i), thus underscoring that the two subsections are to be read together.

This interpretation of the Review Officer is of no consequence in the present proceeding as the record establishes that the one year disqualification was imposed only after a finding that Saint's had a policy of selling certain ineligible items and had received prior warnings, thus satisfying both requirements delineated in the regulation.

**6.** The 1977 Amendment added a provision for money penalties as an alternative in certain instances. The disqualification section reads:
"Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $5,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this chapter. The action of disqualification or the imposition of a civil money penalty shall be subject to review as provided in section 2023 of this title."
7 U.S.C. § 2021 (Supp. I 1977). Regulations to implement this section were promulgated effective January 1, 1979. 43 Fed.Reg. 43277–43279 (Sept. 22, 1978); 7 C.F.R. § 278.6 (1979).
The pertinent regulation provides, in material part,

(1977) provides that if the Secretary of Agriculture determines that disqualifying a store from participation in the program would cause hardship to food stamp households, then the store may be subjected to a civil money damage.

The articulated Congressional purpose prompting the addition of this alternative was addressed by the House Committee which stated:

> To deal with retailer abuse, the Committee bill calls for the addition of civil penalties of up to $5,000 as an alternative punishment to outright program disqualification or suspension, and, indeed, one that should normally [sic] be imposed instead of disqualification (section 12). This would benefit all three major participants in the program—consumers, businesses and the Department itself. Consumers would not lose the convenience of nearby stores during a period of suspension. Businesses would not face the prospect of losing up to half of their business volume during a suspension period.... And the Department would not face the difficult choice between a very lenient punishment (a reprimand) and a very severe one (suspension) in those cases where something between those two is far more appropriate.

H.R.Rep. No. 95–345 at 397, *reprinted in* (1977) U.S.Code Cong. & Ad.News 1704, 1941, 2326.

As noted by the court in *Broad Street Food Market, Inc. v. United States*, 555 F.Supp. 1319, 1326 (D.R.I.1983), "the levying of a money penalty, rather than disqualification, is not tied to any particular level of violation, but applies to any infraction no matter how egregious (provided that the violator sells a substantial variety of food items). 7 C.F.R. § 278.6(g)" (footnote omitted).

In the proceeding below, the Plaintiff urged FNS to impose a civil penalty instead of the disqualification. In response, the agency merely said:

> You further state that hardship will result to your client's food stamp customers who will be unable to benefit from the services your client provides. This, too, is recognized as a possible consequence of disqualification. However, if the program is to operate to the advantage of those families participating, it is essential that program requirements be observed.
>
> Further by review of the file, which contains specific information as to the type and location of nearby authorized stores, indicates that no hardship will be caused to Food Stamp customers.

April 2, 1981, Letter from Administrative Review Staff (Joint Exhibit I, p. 59).

A not dissimilar and, in fact, almost identical, response to a similar store request was found by the court in *Jedatt* to be "insufficient" and that the response failed to "represent the balancing envisioned by Congress when it made available a fine as an alternative."[7] *Jedatt v. U.S. Depart-*

---

"278.6 Disqualification of retain food stores and wholesale food concerns, and imposition of civil money penalties in lieu of disqualifications.

(a) *Authority to disqualify or subject to a civil money penalty.* FNS may disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program for a reasonable period of time, not to exceed 3 years, as FNS may determine, if the firm fails to comply with the Food Stamp Act or this part.

FNS may, in lieu of a disqualification, subject the firm a to [sic] civil money penalty of up to $5,000 for each violation if FNS determines that a disqualification would cause hardship to participating households.

(g) *Criteria for civil money penalty.* FNS may impose a civil money penalty in lieu of disqualification only when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

7. The administrative record in *Jedatt* revealed that the only consideration of the civil penalty alternative was contained in the letter reflecting the final determination of the agency which provided:

> It is recognized that economic hardship, to some degree, is a likely consequence whenever a store is temporarily disqualified. However, I must also consider the interests of the

*ment of Agriculture,* 488 F.Supp. at 266. Thus, the *Jedatt* court remanded the matter to the agency to make further findings as to the appropriateness of imposing the alternative civil penalty. *Id.* at 266–267. There is, however, an important distinction between the agency response and administrative record in the present proceeding and that presented to the court in *Jedatt.*

To begin with, the record in the present proceeding reveals that Saint's is one of several carryouts near the Dunbar Manor Federal Housing Project, an area wherein a large number of food stamp recipients reside. Saint's, however, is not a super market such as was Jedatt's Inc., the store contesting its disqualification in *Jedatt,* but rather is a carryout with a "marginal stock of staple foods." Case Summary, ¶ IV. Civil Money Penalty, Joint Exhibit I, p. 31. A comparable carryout was found to be located two blocks away. *Id.* Moreover, this record reveals that ten blocks away is a more traditional grocery store stocking a much larger and varied inventory of food items. (*Id.*) Based on these findings, the Officer in Charge of the Cincinnati Field Office which conducted the investigation did not feel a civil penalty was appropriate. Therefore, when the Food Stamp Review Officer in his administrative review of the file indicated that the file revealed that sufficient alternatives existed to prevent hardship to recipients should Saint's be temporarily disqualified, there were findings which supported that conclusion. The record in *Jedatt* only indicated, but did not apparently clearly establish, that no hardship would befall recipients should the store in question be temporarily disqualified from the Food Stamp Program. *Jedatt v. U.S. Department of Agriculture,* 488 F.Supp. at 267, n. 18.

 The present record, however, not only reveals that the agency considered the civil penalty alternative, but also took care to identify alternatives available to food stamp customers living in the area before recommending a one year disqualification.

Saint's argues that it is so dependent on its food stamp business that it will be forced to close if it must endure a one year disqualification from the program. To be sure, the legislative history, cited above, indicates that the business consequences to the store are a factor to consider in determining the sanction to impose. However, in view of the absence in the record and arguments of Plaintiff of any evidence that the temporary disqualification of Saint's will result in any burden on food stamp customers in the area, the Court is not persuaded remand is necessary for the sole purpose of making findings concerning the potential economic impact on Saint's should it be disqualified from the program for one year. Moreover, based upon the guidance provided the agency in its regulations, because Saint's did not sell a "substantial variety of staple food items," imposition of a civil penalty as opposed to a one year disqualification would not have been a valid agency action. *See,* 7 C.F.R. § 278.6(g), *supra* note 6. The Court finds, therefore, that the agency gave proper consideration to the alternative of imposing a civil penalty and that Defendant is therefore entitled to summary judgment in its favor on this issue.

## IV. CONCLUSION

Based upon the reasoning and authorities cited above, the Court concludes that Summary Judgment in favor of the Defendant, U.S. Department of Agriculture, should be granted. The Court, therefore, overrules Plaintiff's Motion for Summary Judgment

---

program and fairness and equity, not only to competing stores, but also to those participating retailers who are complying fully with program regulations. We must also be fair to those retailers who have been disqualified from the program in the past for similar violations.

You further state that hardship will result to your client's food stamp customers who will be unable to benefit from the services your client provides. This, too, is recognized as a possible consequence of disqualification. However, if the program is to operate to the advantage of those participating families, it is essential that program requirements be observed.

and grants Defendant's Motion for Summary Judgment on the grounds that the agency acted within its authority as prescribed by the applicable statute and regulations and that the administrative record adequately supports the proposition that ample consideration was given to the imposition of a civil penalty as opposed to a one year disqualification.

Judgment is to be entered for the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.