# BUTZ, SECRETARY OF AGRICULTURE, ET AL. *v.* GLOVER LIVESTOCK COMMISSION CO., INC.

No. 71–1545.   Argued February 27, 1973—Decided March 28, 1973

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEWART, J., filed a dissenting opinion, in which DOUGLAS, J., joined, *post*, p. 189.

*Keith A. Jones* argued the cause for petitioners. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wood, Morton Hollander,* and *William Kanter.*

*R. A. Eilbott, Jr.,* argued the cause for respondent. With him on the brief was *Edward I. Staten.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The Judicial Officer of the Department of Agriculture, acting for the Secretary of Agriculture, found that respondent, a registrant under the Packers and Stockyards Act, 1921, 42 Stat. 159, 7 U. S. C. § 181 *et seq.*, wilfully violated §§ 307 (a) and 312 (a) of the Act, 7 U. S. C. §§ 208 (a) and 213 (a), by incorrect weighing of livestock, and also breached § 401, 7 U. S. C. § 221, by entries of false weights. An order was entered directing that respondent cease and desist from the violations and keep correct accounts, and also suspending respondent as a registrant under the Act for 20 days. Upon review of the decision and order, the Court of Appeals for the Eighth Circuit upheld, as supported by substantial evidence, the findings that respondent violated the Act by short-weighting cattle, and also sustained the cease-and-desist order and the order to keep correct accounts. The Court of Appeals, however, set aside the 20-day suspension. 454 F. 2d 109 (1972). We granted certiorari to consider whether, in doing so, the Court of Appeals exceeded the scope of proper judicial review of administrative sanctions. 409 U. S. 947 (1972). We conclude that the setting aside of the suspension was an impermissible judicial intrusion into the administrative domain under the circumstances of this case, and reverse.

Respondent operates a stockyard in Pine Bluff, Arkansas. As a registered "market agency" under § 303 of the Act, 7 U. S. C. § 203, respondent is authorized to sell consigned livestock on commission, subject to the regulatory provisions of the Act and the Secretary's implementing regulations.[1] Investigations of respondent's op-

---

[1] 7 U. S. C. §§ 201–217a. Specifically, registrants are prohibited from engaging in or using "any unfair, unjustly discriminatory, or

erations in 1964, 1966, and 1967 uncovered instances of underweighing of consigned livestock. Respondent was informally warned to correct the situation, but when a 1969 investigation revealed more underweighing, the present proceeding was instituted by the Administrator of the Packers and Stockyards Administration.

Following a hearing and the submission of briefs, the Department of Agriculture hearing examiner found that respondent had "intentionally weighed the livestock at less than their true weights, issued scale tickets and accountings to the consignors on the basis of the false weights, and paid the consignors on the basis of the false weights." [2] The hearing examiner recommended, in addition to a cease-and-desist order and an order to keep correct records, a 30-day suspension of respondent's registration under the Act.

The matter was then referred to the Judicial Officer. After hearing oral argument, the Judicial Officer filed a decision and order accepting the hearing examiner's findings and adopting his recommendations of a cease-and-desist order and an order to keep correct records. The recommended suspension was also imposed but was reduced to 20 days. The Judicial Officer stated:

> "It is not a pleasant task to impose sanctions but in view of the previous warnings given respondent we conclude that we should not only issue a cease and desist order but also a suspension of respondent

---

deceptive practice or device in connection with . . . receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling . . . of livestock," 7 U. S. C. § 213 (a), and are required to "keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business . . . ." 7 U. S. C. § 221.

The Secretary's regulations may be found in 9 CFR pt. 201.

[2] App. 35.

as a registrant under the act but for a lesser period than recommended by complainant and the hearing examiner." 30 Agri. Dec. 179, 186 (1971).

The Court of Appeals agreed that 7 U. S. C. § 204 authorized the Secretary to suspend "any registrant found in violation of the Act," 454 F. 2d, at 113, that the suspension procedure here satisfied the relevant requirements of the Administrative Procedure Act, 5 U. S. C. § 558, and that "the evidence indicates that [respondent] acted with careless disregard of the statutory requirements and thus meets the test of 'wilfulness.' " 454 F. 2d, at 115. The court nevertheless concluded that the suspension order was "unconscionable" under the circumstances of this case. The court gave two reasons. The first, relying on four previous suspension decisions, was that the Secretary's practice was not to impose suspensions for negligent or careless violations but only for violations found to be "intentional and flagrant," and therefore that the suspension in respondent's case was contrary to a policy of " 'achiev[ing] . . . uniformity of sanctions for similar violations.' " The second reason given was that "[t]he cease and desist order coupled with the damaging publicity surrounding these proceedings would certainly seem appropriate and reasonable with respect to the practice the Department seeks to eliminate." *Id.*, at 114, 115.

The applicable standard of judicial review in such cases required review of the Secretary's order according to the "fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.' " *American Power Co.* v. *SEC,* 329 U. S. 90, 112 (1946). Thus, the Secretary's choice of sanction was not to be overturned unless the Court of Appeals might find it "unwarranted

in law or . . . without justification in fact . . . ." *Id.,* at 112–113; *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 194 (1941); *Moog Industries, Inc.* v. *FTC,* 355 U. S. 411, 413–414 (1958); *FTC* v. *Universal-Rundle Corp.,* 387 U. S. 244, 250 (1967); 4 K. Davis, Administrative Law § 30.10, pp. 250–251 (1958). The Court of Appeals acknowledged this definition of the permissible scope of judicial review [3] but apparently regarded respondent's suspension as "unwarranted in law" or "without justification in fact." We cannot agree that the Secretary's action can be faulted in either respect on this record.

We read the Court of Appeals' opinion to suggest that the sanction was "unwarranted in law" because "uniformity of sanctions for similar violations" is somehow mandated by the Act. We search in vain for that requirement in the statute.[4] The Secretary may suspend

---

[3] The Court of Appeals stated:

"Ordinarily it is not for the courts to modify ancillary features of agency orders which are supported by substantial evidence. The shaping of remedies is peculiarly within the special competence of the regulatory agency vested by Congress with authority to deal with these matters, and so long as the remedy selected does not exceed the agency's statutory power to impose and it bears a reasonable relation to the practice sought to be eliminated, a reviewing court may not interfere. . . . [A]ppellate courts [may not] enter the more spacious domain of public policy which Congress has entrusted in the various regulatory agencies." 454 F. 2d 109, 114.

[4] The Court of Appeals cited a 1962 decision by the Secretary in which appears a reference to "uniformity of sanctions for similar violations." *In re Silver,* 21 Agri. Dec. 1438 (1962). That reference is no support for the Court of Appeals' decision, however, for the Secretary said expressly in that decision:

"False and incorrect weighing of livestock by registrants under the act is a flagrant and serious violation thereof . . ." and "even if respondent did not give instructions for the false weighings, *his negligence in allowing the false weighings over an extended period brings such situation within the reach of the cited cases* [sustaining sanctions] *and we would still order the sanctions below." Id.,* at 1452 (emphasis added).

"for a reasonable specified period" any registrant who has violated any provision of the Act. 7 U. S. C. § 204. Nothing whatever in that provision confines its application to cases of "intentional and flagrant conduct" or denies its application in cases of negligent or careless violations. Rather, the breadth of the grant of authority to impose the sanction strongly implies a congressional purpose to permit the Secretary to impose it to deter repeated violations of the Act, whether intentional or negligent. *Hyatt* v. *United States*, 276 F. 2d 308, 313 (CA10 1960); *G. H. Miller & Co.* v. *United States*, 260 F. 2d 286 (CA7 1958); *In re Silver*, 21 Agri. Dec. 1438, 1452 (1962).[5] The employment of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases. *FCC* v. *WOKO*, 329 U. S. 223, 227–228 (1946); *FTC* v. *Universal-Rundle Corp.*, 387 U. S., at 250, 251; *G. H. Miller & Co.* v. *United States*, *supra*, at 296; *Hiller* v. *SEC*, 429 F. 2d 856, 858–859 (CA2 1970); *Dlugash* v. *SEC*, 373 F. 2d 107, 110 (CA2 1967); *Kent* v. *Hardin*, 425 F. 2d 1346, 1349 (CA5 1970).

Moreover, the Court of Appeals may have been in error in acting on the premise that the Secretary's practice was to impose suspensions only in cases of "intentional and flagrant conduct." [6] The Secretary's practice, rather, apparently is to employ that sanction as in his judgment

---

[5] It is by no means clear that respondent's violations were merely negligent. The hearing examiner found that respondent had "intentionally" underweighed livestock, and the Judicial Officer stated: "We conclude then, as did the hearing examiner, that respondent *wilfully* violated . . . the act." (Emphasis added.) "Wilfully" could refer to either intentional conduct or conduct that was merely careless or negligent. It seems clear, however, that the Judicial Officer sustained the hearing examiner's finding that the violations were "intentional."

[6] See, *e. g., In re Martella*, 30 Agri. Dec. 1479 (1971); *In re Meggs*, 30 Agri. Dec. 1314 (1971); *In re Producers Livestock Mar-*

best serves to deter violations and achieve the objectives of that statute. Congress plainly intended in its broad grant to give the Secretary that breadth of discretion. Therefore, mere unevenness in the application of the sanction does not render its application in a particular case "unwarranted in law."

Nor can we perceive any basis on this record for a conclusion that the suspension of respondent was so "without justification in fact" "as to constitute an abuse of [the Secretary's] discretion." *American Power Co. v. SEC,* 329 U. S., at 115; *Moog Industries, Inc. v. FTC,* 355 U. S., at 414; *Barsky v. Board of Regents,* 347 U. S. 442, 455 (1954). The Judicial Officer rested the suspension on his view of its necessity in light of respondent's disregard of previous warnings. The facts found concerning the previous warnings and respondent's disregard of these warnings were sustained by the Court of Appeals as based on ample evidence. In that circumstance, the overturning of the suspension authorized by the statute was an impermissible intrusion into the administrative domain.

Similarly, insofar as the Court of Appeals rested its action on its view that, in light of damaging publicity about the charges, the cease-and-desist order sufficiently redressed respondent's violations, the court clearly exceeded its function of judicial review. The fashioning of an appropriate and reasonable remedy is for the

---

*keting Assn.,* 30 Agri. Dec. 796 (1971); *In re Trimble,* 29 Agri. Dec. 936 (1970); *In re Anson,* 28 Agri. Dec. 1127 (1969); *In re Williamstown Stockyards,* 27 Agri. Dec. 252 (1968); *In re Middle Georgia Livestock Sales Co.,* 23 Agri. Dec. 1361 (1964). These cases involve suspension of registrants under the Packers and Stockyards Act for false weighing of producers' livestock and in none was there a finding that the violation was intentional or flagrant. There are also many cases of suspension for diverse other violations without a finding that the conduct was intentional or flagrant. See, *e. g., In re Wallis,* 29 Agri. Dec. 37 (1970).

Secretary, not the court. The court may decide only whether, under the pertinent statute and relevant facts, the Secretary made "an allowable judgment in [his] choice of the remedy." *Jacob Siegel Co.* v. *FTC,* 327 U. S. 608, 612 (1946).

*Reversed.*

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The only remarkable thing about this case is its presence in this Court. For the case involves no more than the application of well-settled principles to a familiar situation, and has little significance except for the respondent. Why certiorari was granted is a mystery to me—particularly at a time when the Court is thought by many to be burdened by too heavy a caseload. See Rule 19, Rules of the Supreme Court of the United States.

The Court of Appeals did nothing more than review a penalty imposed by the Secretary of Agriculture that was alleged by the respondent to be discriminatory and arbitrary. In approaching its task, the appellate court displayed an impeccable understanding of the permissible scope of review:

> "The scope of our review is limited to the correction of errors of law and to an examination of the sufficiency of the evidence supporting the factual conclusions. The findings and order of the Judicial Officer must be sustained if not contrary to law and if supported by substantial evidence. Also, this Court may not substitute its judgment for that of the Judicial Officer's as to which of the various inferences may be drawn from the evidence." 454 F. 2d 109, 110–111.

.    .    .    .    .

"Ordinarily it is not for the courts to modify ancillary features of agency orders which are supported by substantial evidence. The shaping of remedies is peculiarly within the special competence of the regulatory agency vested by Congress with authority to deal with these matters, and so long as the remedy selected does not exceed the agency's statutory power to impose and it bears a reasonable relation to the practice sought to be eliminated, a reviewing court may not interfere." *Id.,* at 114.

Had the Court of Appeals used the talismanic language of the Administrative Procedure Act, and found the penalty to be either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U. S. C. § 706 (2)(A), I have no doubt that certiorari would have been denied. But the Court of Appeals made the mistake of using the wrong words, saying that the penalty was "unconscionable," because it was "unwarranted and without justification in fact." [1]

Today the Court holds that the penalty was not "unwarranted in law," because it was within permissible statutory limits. But this ignores the valid principle of law that motivated the Court of Appeals—the principle that like cases are to be treated alike. As Professor Jaffe has put the matter:

"The scope of judicial review is ultimately conditioned and determined by the major proposition that the constitutional courts of this country are the acknowledged architects and guarantors of the integrity of the legal system. . . . An agency is not an island entire of itself. It is one of the many rooms in the magnificent mansion of the law. The

---

[1] The Court of Appeals borrowed this phrasing of the test from this Court's opinion in *American Power Co.* v. *SEC,* 329 U. S. 90, 112–113.

very subordination of the agency to judicial jurisdiction is intended to proclaim the premise that each agency is to be brought into harmony with the totality of the law; the law as it is found in the statute at hand, the statute book at large, the principles and conceptions of the 'common law,' and the ultimate guarantees associated with the Constitution." [2]

The reversal today of a wholly defensible Court of Appeals judgment accomplishes two unfortunate results. First, the Court moves administrative decisionmaking one step closer to unreviewability, an odd result at a time when serious concern is being expressed about the fairness of agency justice.[3] Second, the Court serves notice upon the federal judiciary to be wary indeed of venturing to correct administrative arbitrariness.

Because I think the Court of Appeals followed the correct principles of judicial review of administrative conduct, I would affirm its judgment.

---

[2] L. Jaffe, Judicial Control of Administrative Action 589–590 (1965).

[3] See generally K. Davis, Discretionary Justice: A Preliminary Inquiry (1969), reviewed by Wright, Beyond Discretionary Justice, 81 Yale L. J. 575.