**Charles WISE t/a Wise's Grocery**

v.

**UNITED STATES of America.**
**Civ. No. T–75–1305.**

United States District Court,
D. Maryland.

Dec. 2, 1975.

---

**12**

Stuart L. Sagal, Bass & Denick, P. A., Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., and Thomas G. Banjanin, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Senior District Judge.

Plaintiff seeks review of a final determination of the Department of Agriculture Food Stamp Review Officer,[1] finding plaintiff in violation of the Food Stamp Act and regulations thereunder and disqualifying him and his grocery store from participation in the food stamp program for a six month period which began on September 6, 1975. Plaintiff attacks only the length of the period of disqualification. The government answered and filed a motion for summary judgment, setting out facts which plaintiff has admitted. The case came on for hearing on that motion and a motion for a preliminary injunction filed by plaintiff on November 4. The court suggested and the parties agreed that the case be fully heard on the merits at that time, and each side submitted all the evidence it wished the court to consider.

### Facts

Plaintiff operates a retail grocery store at 1400 Argyle Avenue, in West Baltimore. His only employees are members of his immediate family.

In July 1971 the Acting Officer in Charge, Baltimore Field Office of the Food and Nutrition Service of the Department of Agriculture (the Department), mailed a letter to plaintiff confirming a conversation that Stanley Ali, an employee of the Department, had with plaintiff, in which plaintiff was advised that his store had an unusually high rate of coupon redemptions, much higher than other stores in the area, and that this high rate suggested violations of the food stamp regulations in plaintiff's store. Ali then reviewed the regulations governing food coupon transactions, with special emphasis on those which prohibit their acceptance in sales of ineligible items. Plaintiff was advised that violations could result in disqualification from the Food Stamp Program, and that it was vital that he make sure that his employees, whether full-time or part-time, know the program regulations and adhere to them.

On August 13, 1974, the Department mailed a letter to plaintiff confirming a conversation between Charles F. Smith, another employee of the Department, and plaintiff on August 6, 1974, in which Smith informed plaintiff that he had received reports that plaintiff's store was accepting food coupons for ineligible items. Smith also advised plaintiff that during a visit on August 5, 1974, he had observed plaintiff's daughter accept $8.00 in food stamps for a purchase that included ineligible items, and pointed out that plaintiff's store had an unusually high rate of coupon redemptions. Smith gave plaintiff a review of the regulations governing food coupon transactions with special emphasis on those which prohibit the sale of ineligible items. Smith also advised plaintiff that he could be disqualified from the Food Stamp Program, that he was responsible for violations committed by his employees and that it was vital that all store personnel, whether full-time or part-time, know the program regulations and adhere to them.

On December 13, 16 and 17, 1974, an Investigative Aide of the Department visited plaintiff's store and observed five

1. See 7 C.F.R. § 273.2 (1975).

separate transactions involving the sale of ineligible items, conducted by plaintiff or a member of his immediate family.[2]

On March 19, 1975, in accordance with 7 C.F.R. § 272.6 (1975), the Department sent plaintiff a letter of charges, to which plaintiff responded orally. After further consideration, the Department, on June 16, 1975, sent plaintiff a letter stating that the appropriate officer of the Department had determined: (1) that plaintiff or his employees had violated the applicable regulations in the manner specified in the letter of March 19; and (2) that plaintiff's store would be disqualified from participation in the food stamp program for a period of six months. Plaintiff was advised of his right of administrative review, and availed himself of that right. The Food Stamp Review Officer considered the points plaintiff raised, but stated:

"It is my finding that the violations set forth in the Letter of Charges did, in fact, occur. These violations must be held to be the result of gross negligence and carelessness, if not utter disregard for Program Regulations. I also find that you failed in your responsibility to assure yourself that your employees were complying with the Regulations at all times.

" * * *

" * * * It is my determination that the six month period of disqualification proposed against Wise's Grocery and you, as owner, by the Director of the Food Stamp Division is fair and proper. I am sustaining that decision. * * * "

As noted above, plaintiff does not dispute the facts found by the Department. He contends that the six-month suspension will cause hardship to him and to his customers, because his store is the only "full service" grocery store in the immediate area, although there are other grocery stores in that area. He seeks to support his claim of hardship by asserting that if he is not allowed to accept food stamps he will be unable to meet the payments under a loan he received from the Small Business Administration in 1973 because the loss of the food stamp business will leave nothing for him after he has paid all other expenses, including the wages he pays his children. It appears, however, that although he was already moderately in arrears in his payments to SBA, that agency considered that he was "reasonably up to date". The court finds that there is no serious danger of an acceleration of the SBA loan.

*Discussion*

The law controlling the decision of this case is set out in the majority opinion in *Cross v. United States,* 512 F.2d 1212 (4 Cir. 1975, en banc), at p. 1217 et seq.:

" * * * Due process on the issue of sanction requires that the punishment follow rationally from the facts, be authorized by the statute and regulations, and aim toward fulfillment of the Act's purposes. The standard of review which is employed in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), the *Welch* [*Welch v. United States*] concurrence [464 F.2d 682, 685, 4 Cir. 1972], and the *Shurkin* [*Shurkin v. U. S.*] majority [unreported, 473 F.2d 907, 4 Cir. 1973], is that the court shall decide whether the administrative sanction is 'arbitrary or capricious.' Section 2022 itself requires the district court to review the sanction for 'validity.' As recently reiterated in *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–186, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973), 'the Secretary's choice of sanction . . . [is] not to be overturned unless . . . it [is] "unwarranted in law or . . . without justification in fact" . . . .'.

---

**2.** On two occasions the ineligible items included cigarettes; in other transactions, cosmetics, a curling iron, hair curlers, brushes, a flash light, batteries, and floor finish were included.

"We deem all three of these expressions synonymous and they define the due process which we hold must be afforded. To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact. Thus, the scope of review of a sanction is not as broad as the scope of review of the fact of violation. The more limited scope of review of a sanction results from the vesting of discretion by Congress in the Secretary to devise and administer a scheme of disqualifications (7 U.S.C. § 2020) for the effective and efficient administration of the food stamp program (7 U.S.C. § 2013(c)). The Secretary has done so, both in his formal regulations, 7 C.F.R. §· 272.6(a), and in the instructions of his designate, the Deputy Administrator, FNS, contained in a memorandum dated March 13, 1970 to Regional and Field Offices, Food Stamp Division, setting forth successive periods of disqualification and defining what categories of violations warrant each period of sanction. Thus, the views of the Secretary as to the appropriate sanction in a given case of violation are entitled to very great, if not conclusive, weight.

" * * * only in those instances in which it may be fairly said on the *de novo* record as a whole that the Secretary, acting through his designates, has abused his discretion by acting arbitrarily or capriciously, would the district court be warranted in exercising its authority to modify the penalty. * * *." (footnotes omitted). 512 F.2d at 1217–18.

The six months' sanction is authorized by the statute and regulations, which permit a reasonable period of disqualification not to exceed three years. The guidelines contained in the memorandum dated March 13, 1970, referred to in the quotation from *Cross,* state the criteria for determining the appropriate length of disqualification. In pertinent part, they provide:

"B *One-Year Disqualifications.* A one-year disqualification is normally the maximum period which will be assigned to a retailer not previously disqualified from the program. One-year disqualifications usually will be assigned in the following situations:

"1. The evidence clearly shows that the retailer, as a matter of store policy, is engaged in violations such as:

"a * * *

"b The sale of ineligible items such as alcoholic beverages and other major non-grocery type items.

"2. FNS personnel have taken significant compliance action to prevent violations, and the evidence clearly shows that the retailer is engaged in violations such as:

"a * * *

"b Any violations which show a deliberate and widespread disregard for program regulations.

"C *Six-Month Disqualifications.* Six-month disqualifications will be assigned in the following situations:

"1. The evidence is the same as that described in B 2 under one-year disqualifications, but compliance action is either lacking or too limited to support a one-year disqualification. The record should show, however, that a reasonable educational effort has been made by FNS personnel to make the retailer aware of the regulations and his responsibilities.

"2. FNS personnel have taken significant compliance action to prevent violations, and the evidence clearly shows that the retailer, as a matter of store policy, is engaged in violations such as:

"a The sale of common grocery type ineligible items in amounts which tend to be found in a normal shopping basket, or

"b Any violations committed on the condition that recipients spend their coupons at the violating store.

"D *Ninety-Day Disqualifications.* Ninety-day disqualifications normally will be assigned in cases like those described in C 2 under six-month disqualifications, where compliance action is either lacking or too limited to support a six-month disqualification. The record should show, however, that a reasonable educational effort has been made by FNS personnel to make the retailer aware of the regulations and his responsibilities."

In light of the statute, the regulations, the guidelines, and the majority opinion in *Cross,* this court, after considering all of the evidence, finds and concludes that the administrative sanction is not arbitrary or capricious. The length of the period of disqualification is in accord with the guidelines, quoted above, for Six-Month Disqualifications.

Plaintiff's attorney called attention to four cases in other districts;[3] in two of them the sanction was three months or less; in two of them the sanction was one year. Footnote 8 to the *Cross* opinion, 512 F.2d at 1217, reads:

"It is not true, however, that similar violations must result in uniform sanctions. 'Mere unevenness in the application of the sanction does not render its application in a particular case "unwarranted in law." ' *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 188, 93 S.Ct. 1455, 1459, 36 L.Ed. 2d 142 (1973). On the other hand, excessive variance, something more striking than 'mere unevenness,' would be evidence of arbitrary or capricious action, because in that instance it may well be concluded that the Secretary failed to observe his own regulations and therefore the sanction was unwarranted in law."

This court finds no excessive variance that would justify a finding that the six-month sanction in this case is arbitrary

and capricious, or was unwarranted in law.

Judgment will be entered in favor of the United States, the defendant herein.

---

3. *Marcus v. United States Dept. of Agric., Food and Nut. Serv.,* 364 F.Supp. 374 (E. D.Pa.1973); *Miller v. United States Dept. of Agric., Food and Nut. Serv.,* 345 F.Supp. 1131 (W.D.Pa.1972); *Farmingdale Super-*market, *Inc. v. United States,* 336 F.Supp. 534 (D.N.J.1971); *Marbro Foods, Inc. v. United States,* 293 F.Supp. 754 (N.D.Ill. 1968).