872 F.2d 1028
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James B. RIVERS, D.M.D., Petitioner,
v.
John C. LAWN, in his capacity as Administrator of the Drug
Enforcement Administration, United States
Department of Justice, Respondents.
 No. 88-3583.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and BARBARA K. HACKETT, District Judge*.
 PER CURIAM.
 
 
 1
 Dr. James B. Rivers ("Dr. Rivers") appeals the decision of the Administrator of the Drug Enforcement Administration ("DEA") to revoke his Certificate of Registration and deny any pending applications for renewal pursuant to 21 U.S.C. Secs. 823(f) and 824(a)(4). Without DEA registration Dr. Rivers cannot lawfully prescribe controlled substances in the course of his dental practice as an oral and maxilla surgeon. For the reasons that follow, we affirm the Administrator's decision.
 
 I.
 
 2
 On May 6, 1987, the DEA issued an Order for Dr. Rivers to show cause why his registration to prescribe controlled substances should not be revoked on the ground that his continued registration would be "inconsistent with the public interest." The order was based on allegations that he had prescribed controlled substances knowing he lacked DEA authorization to do so, and he had prescribed controlled substances to a known drug abuser for no legitimate medical need, sometimes writing the prescriptions to fictitious names.
 
 
 3
 Dr. Rivers requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 3, 1987. On February 16, 1988, the ALJ recommended that Dr. Rivers' registration be revoked, and on May 27, 1988, the DEA Administrator adopted the ALJ's recommendations in full. Dr. Rivers filed a petition for judicial review on July 1, 1988, and this court has jurisdiction pursuant to 21 U.S.C. Sec. 877.
 
 
 4
 Dr. Rivers received his dental medicine degree from the University of Louisville in Louisville, Kentucky, in 1966, and has been in private practice as an oral and maxilla surgeon in Knoxville, Tennessee, since 1973. The allegations against him arise from his relationship with Byron Seals. They met in March 1980, after Seals had suffered a severe facial fracture in a motorcycling accident. Dr. Rivers treated Seals while he was in the hospital and later on an outpatient basis.
 
 
 5
 In addition to his motorcycling injuries, Seals suffered from extremely poor dental health. Many of his teeth were fractured or broken and required repair. Dr. Rivers prescribed pain medication for Seals, but eventually came to suspect that Seals' complaints were overstated and he was probably a drug addict. Seals later confirmed Dr. Rivers' suspicions, yet Dr. Rivers continued to prescribe medication for Seals.
 
 
 6
 On May 31, 1983, the Tennessee Department of Health and Environment received reports that individuals of "questionable character" were presenting prescriptions for Schedule II controlled substances to Knoxville area pharmacists. The prescriptions were written by Dr. Rivers. Among the most frequently prescribed drugs were Demerol,[1] Dilaudid,[2] and Percodan.[3] On January 6, 1984, state Investigator Jack Henderson questioned Dr. Rivers about these reports. Dr. Rivers explained his relationship with Seals and his belief that Seals was a drug addict. Henderson warned Dr. Rivers that he may have violated federal law by maintaining an individual's drug addiction. Dr. Rivers stated that he was afraid of Seals, but he did not anticipate prescribing any more medicine for him in the future. But a few months later, Henderson learned that Dr. Rivers had continued to prescribe drugs for Seals.
 
 
 7
 On October 4, 1985, Henderson, by then a DEA investigator, interviewed Dr. Rivers after he discovered the doctor's DEA registration had expired some ten years earlier. Henderson testified that Dr. Rivers said he was not aware he was supposed to have transferred his DEA registration when he moved to Tennessee, and he was also unaware that DEA registration required annual renewal. Henderson gave Dr. Rivers a DEA Physician's Manual, advised him on how to apply for a new registration, and told him that he was no longer authorized to prescribe controlled substances and if he did anyway, he would be intentionally violating federal law.
 
 
 8
 Four days later, Dr. Rivers' attorney prepared and sent a letter to Seals, which explained that the doctor's DEA number had expired and he could write no more prescriptions. Yet on October 21, 1985, Henderson learned that Dr. Rivers had prescribed a controlled substance for a James Crippen.
 
 
 9
 On March 11, 1986, the DEA issued Dr. Rivers a new Certificate of Registration. But also during that month, Henderson learned from employees at three Knoxville area pharmacies that they had filled several prescriptions for controlled substances written by Dr. Rivers after October 4, 1985, but before he was recertified. DEA Investigator Vicki Jackson learned similar information in her survey of Knoxville pharmacies in December 1986 and January 1987. Based on the information she obtained in her survey of only fourteen pharmacies, Jackson was able to determine that Dr. Rivers had written Seals prescriptions for more than 17,000 dosage units of controlled substances, primarily Schedule II drugs, between January 30, 1981, and March 21, 1986.[4] Moreover, pharmacists told Jackson that when they attempted to verify Dr. Rivers' prescriptions for Edward Byron Seals, David Keck, and Kyle Hanley, the doctor said the drugs were for patients suffering from throat cancer. Dr. Rivers later admitted he knew that the names David Keck and Kyle Hanley were fictitious names used by Seals.
 
 
 10
 Dr. Rivers testified that Seals coerced him into writing prescriptions by threatening him and his family. Dr. Rivers testified he took several steps to terminate his contact with Seals, and introduced into evidence affidavits from a Knox County prosecutor and the head of the Knoxville-Knox County Metro Drug Unit, both of whom said that Dr. Rivers had contacted them about Seals in early 1986.
 
 
 11
 Dr. Rivers testified he had sought an injunction to prevent Seals from contacting him, but it was impossible to serve process as Seals could not be located. Yet he also testified that during the time he allegedly could not locate Seals, he performed oral surgery on Seals on January 24, 1986.
 
 
 12
 Dr. Rivers' attorney filed a complaint and obtained an injunction against Seals on April 30, 1986. Dr. Rivers testified that he had not seen Seals since the injunction had issued. He testified that he now had a better understanding of how to deal with patients like Seals and he would avoid similar situations in the future.
 
 II.
 A.
 
 13
 Our review of the contested administrative action is guided by the "arbitrary and capricious" standard and the determination of whether the decision to revoke Dr. Rivers' registration is permitted by law and justified by the facts. See Fourth Street Pharmacy v. United States Department of Justice, 836 F.2d 1137, 1138-39 (8th Cir.1988) (per curiam); Kirk v. Mullen, 749 F.2d 297, 300 (6th Cir.1984). This court must uphold the DEA's decision if it is "rational, based on consideration of the relevant factors, and within the scope" of Agency authority. Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 42 (1983). In addition, the Administrator's "findings of fact, if supported by substantial evidence, shall be conclusive." 21 U.S.C. Sec. 877.
 
 
 14
 The Administrator's authority to revoke physicians' Certificates of Registration is set out at 21 U.S.C. Secs. 823 and 824. The Administrator may revoke a registration if the physician "has committed such acts as would render his registration under section 823 of this title inconsistent with the public interest...." 21 U.S.C. Sec. 824(a)(4).[5]
 
 B.
 
 15
 After consideration of the record in this case, the briefs and oral argument, we find the Administrator's decision to be a reasonable exercise of discretion, permitted by law and justified by the facts. It is uncontested that over a five-year period, Dr. Rivers prescribed more than 17,000 dosage units of primarily Schedule II controlled substances to a person he knew to be a drug addict. He sometimes wrote these prescriptions to names he knew to be fictitious, and did so knowing he lacked the authority to prescribe them. It was not unreasonable for the ALJ to give minimal consideration to Dr. Rivers' attempts to seek help from Knoxville prosecutors and drug investigators, considering these efforts came approximately six years after Dr. Rivers first met Seals and several years after he became aware that his prescription practices were under the scrutiny of state and federal drug investigators.
 
 
 16
 Dr. Rivers argues the evidence in this case does not justify revocation of his registration. Yet the ALJ and the Administrator are not bound by his interpretations of the evidence. Dr. Rivers also argues that the applicable federal statutes provide him with no guidance as to how he can prevail on the issue of "public interest." We find the relevant statutes provide a reasonable model of analysis to guide the Administrator in the exercise of his discretion. Moreover, neither the ALJ nor the Administrator are bound by the doctor's assurances that he will comply with federal drug laws in the future.
 
 
 17
 Dr. Rivers also argues the Administrator wrongly failed to offer him an alternative sanction. The sanctions imposed by an agency administrator are subject to a very limited judicial review. See Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 187-88 (1973). Section 824(a) empowers the Administrator to revoke or suspend a physician's registration for several reasons, including failure to comply with the standards listed in section 823. We find the Administrator's decision to revoke Dr. Rivers' registration to be a reasonable exercise of discretion based upon substantial evidence and the analytical guidelines of section 823.
 
 III.
 
 18
 For the foregoing reasons, the Administrator's decision to revoke Dr. Rivers' registration is AFFIRMED.
 
 
 
 *
 Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Demerol is a pain medication which works almost as effectively as morphine. 1 J.E. Schmidt, Attorney's Dictionary of Medicine and Word Finder, D-31 (1986) (hereinafter "Schmidt's Dictionary")
 
 
 [2]
 Dilaudid is a brand of dihydromorphinone hydrochloride, which is a morphine derivative considered by some to be more powerful yet less habit-forming than morphine. Id. at D-84, D-86
 
 
 [3]
 Percodan is a pain medication for moderate to moderately severe pain. 3 Schmidt's Dictionary at P-107
 
 
 [4]
 Dividing the 17,000 dosage units by the approximately 1,900 days in this time period produces an average of 8.95 dosage units per day, a figure we as medical laymen find remarkable, given the potency of Schedule II controlled substances. This figure would be larger, of course, if Seals had prescriptions filled at pharmacies other than the fourteen Jackson surveyed
 
 
 [5]
 In determining the public interest, the following factors shall be considered:
 * * *
 (2) The applicant's experience in dispensing, or conducting research with respect to controlled substances.
 * * *
 (4) Compliance with applicable State, Federal, or local laws relating to controlled substances [, and]
 (5) Such other conduct which may threaten the public health and safety.
 21 U.S.C. Sec. 823(f).