61 F.3d 907
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Irvin WILSON and Pet Paradise, Inc., Petitioners,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.
 No. 92-3740.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 18, 1995.[1]
Decided May 19, 1995.
 
 On Appeal for Review of an Order of the Secretary of Agriculture.
 USDA
 PETITION DENIED.
 Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 DP1 Irvin Wilson, Sr. owns a corporation named Pet Paradise, Incorporated, which included a pet shop, also called Pet Paradise, specializing in exotic animals. The pet shop was operated by Irvin Wilson, Jr., who is now incarcerated on unrelated charges. Several inspections by the United States Department of Agriculture (USDA) resulted in a finding of 61 violations involving 27 of the regulations and standards of promulgated pursuant to the Animal Welfare Act, 7 U.S.C. Sec. 2131 et seq. The USDA imposed sanctions of a $5,000 fine and a suspension of the USDA license for 30 days or until compliance is shown.
 
 
 2
 Irvin Wilson, Sr. asks that we let him represent his company before this court.[2] Because he is not an attorney, however, he may not represent Pet Paradise, a corporation, in federal court. See Strong Delivery Ministry Association v. Board of Appeals of Cook County, 543 F.2d 32 (7th Cir. 1976) (per curiam). The USDA complaint names Pet Paradise, Inc. as respondent. In Wilson's answer to the administrative complaint alleging that Pet Paradise was licensed and operating as a dealer, Wilson admitted that allegation, and admitted that he applied for the license "in behalf of Pet Paradise." The inspection reports are issued in the name of Pet Paradise as the dealer. While the USDA license is made out in the name of "Irvin Wilson, Sr.", the USDA Initial Decision and Order finds that Pet Paradise, Inc., as licensee and dealer, willfully violated certain standards and regulations, and the USDA imposed sanctions (fine and loss of license) on Pet Paradise, Inc.
 
 
 3
 Ultimately, though, it matters little, since Pet Paradise, Inc., Wilson, Sr., and Wilson, Jr. bear the sanctions jointly. A corporation and the individuals exercising sole control and direction over the corporation are jointly assessed penalties under the Animal Welfare Act. The Act provides, under a section entitled, "principal-agent relationship established," that any act or omission of a person "acting for or employed by a ... dealer ... or a person licensed as a dealer ... within the scope of his employment or office, shall be deemed the act, omission, or failure of such ... dealer,... or licensee,... as well as of such person." 7 U.S.C. Sec. 2139.[3] See, e.g., Animal Research Center of Mass., Inc., 37 Ag. Dec. 1168 (1978) (although license issued to corporation, individuals exercising sole control and direction are jointly assessed civil penalty). In addition, even where no license has been issued, the USDA may impose sanctions. See, e.g., In re McCall, 52 Ag. Dec. 986 (1993); In
 
 
 4
 re Bradshaw, 50 Ag. Dec. 499 (1991).
 
 
 5
 We find no reason to disturb the sanctions imposed.[4] Our standard of review of administrative decisions is narrow; the administrative agency's sanctions will be upheld if they are lawful, i.e., unwarranted in law and unjustified in fact. See Butz v. Glover Livestock Comm'n, 411 U.S. 182, 185-86 (1973); Lesser v. Espy, 34 F.3d 1301, 1310 (7th Cir. 1994). In determining the appropriateness of a penalty, the Secretary shall consider "the size of the business of the person involved,[5] the gravity of the violation, the person's good faith, and the history of previous violations." 7 U.S.C. Sec. 2149(b). The record here unquestionably establishes that there was a two-year history of repeated and grave violations,[6] willful refusal to correct the violations and meet the applicable standards, and a general absence of good faith demonstrated by repeatedly ignoring warnings after numerous inspections. The suspension of the license, 7 U.S.C. Sec. 2149(a), and the imposition of a fine,
 
 
 6
 7 U.S.C. Sec. 2149(b), were warranted in law and justified in fact.
 
 
 7
 PETITION DENIED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [2]
 Wilson, Sr., Wilson, Jr., and Pet Paradise have all filed papers in this appeal. Wilson, Sr. argues, "My company is not a party of this action," that it was his son, also named Irvin Wilson, who "house[d] his exotic animals at my pet shop." At the time, Wilson, Jr., had "was an officer of Pet Paradise, Incorporated, but does not have any ownership interest." Wilson, Sr., argues that he was merely the landlord while Wilson, Jr. was the tenant: "Therefore this action should be only against Irvin Wilson and as such may be handled pro se."
 
 
 [3]
 Similarly, the Animal Welfare regulations provide that any "person who has been or is an officer, agent, or employee of a licensee whose license has been suspended or revoked and who was responsible for or participated in the violation upon which the order of suspension or revocation was based will not be licensed within the period during which the order of suspension or revocation is in effect." 9 C.F.R. Sec. 2.9
 In addition, "No partnership, firm, corporation, or other legal entity in which any such person [whose license application has been denied] has a substantial interest, financial or otherwise, will be licensed" within one year of the license denial. 9 C.F.R. Sec. 2.10.
 
 
 [4]
 Wilson does not challenge the finding that the violations actually occurred
 
 
 [5]
 Pet Paradise's gross sales in 1989 were only $11,468; but defendant considers it a moderate-sized facility because of the large number and the many different types of animals housed
 
 
 [6]
 Violations included allowing buildup of fecal material, repeated failure to tend to a sore lion, failure to have a veterinarian on call, crowding animals into inadequate space, failure to provide water and food to animals, and endangering rabbits' lives by housing them with larger animals