Fred HODGINS, Janice Hodgins
& Hodgins Kennels, Inc.
Petitioners–Appellants,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, Respondent–
Appellee.

No. 01–3508.

United States Court of Appeals,
Sixth Circuit.

April 17, 2002.

Before MARTIN, Chief Circuit Judge; MOORE and CLAY, Circuit Judges.

PER CURIAM.

Defendants Fred Hodgins, Janice Hodgins and Hodgins Kennels, Inc. appeal the Secretary of the United States Department of Agriculture's (1) determination, on remand from this court, that they committed fifteen violations of the Animal Welfare Act, 7 U.S.C. § 2131–2159, and the regulations promulgated thereunder, 9 C.F.R. §§ 1.1–3.142, and (2) the Secretary's accompanying assessment of a $325 penalty and issuance of a cease and desist order. Although we have some concerns regarding the necessity of a cease and desist order, we AFFIRM the Secretary's decision.

## I.

Fred and Jane Hodgins are the owners and operators of Hodgins Kennels, a licensed business that sells small animals— primarily dogs and cats—to research facilities. The Animal and Plan Health Inspection Service, an arm of the Department of Agriculture, cited the Hodgins and Hodgins Kennels (collectively, "Hodgins Kennels") for a variety of Animal Welfare Act violations during eight inspections from November 16, 1993 through November 22, 1994. Following these citations, the Department instituted disciplinary proceedings against Hodgins Kennels.

On May 31, 1996, an administrative law judge ruled that Hodgins Kennels committed sixty-one violations of the Animal Welfare Act, and issued a cease and desist order and imposed a $16,000 fine. On appeal, a Department judicial officer, the Secretary's designate for adjudicatory purposes, found that Hodgins Kennels committed fifty-eight violations and assessed a $13,500 fine. The Secretary also suspended their dealer license for fourteen days and issued a cease and desist order.

Because the record did not contain substantial evidence for the majority of the Secretary's findings, particularly with respect to the willfulness of the alleged violations, we vacated the Secretary's opinion and remanded the case for further proceedings. *Hodgins v. United States Department of Agriculture,* No. 97–3899, 2000 WL 1785733 (6th Cir. Nov.11, 2000). We subsequently awarded Hodgins Kennels $155,384.99 in attorneys fees and costs pursuant to the Equal Access to Justice Act.

On remand, the Secretary invited the parties to submit supplemental briefs regarding the issue of an appropriate sanction. The Department submitted a Recommendation for Sanctions requesting assessment of a $2,500 fine and issuance of a cease and desist order, but declined to submit supplemental briefing.

The Secretary concluded that there was sufficient evidence for fifteen, relatively minor, violations of the Animal Welfare Act. Emphasizing the minor nature of these violations, the Secretary imposed only a $325 fine. The Secretary also issued a cease and desist order.

## II.

Hodgins Kennels' appeal challenges the Secretary's decision to impose a $325 fine and issue a cease and desist order. In assessing an administrative decision regarding a particular penalty or set of penalties, our review is ordinarily limited to assessing whether the penalty is either "unwarranted in law ... or without justification in fact." *Butz v. Glover Livestock Comm. Co.,* 411 U.S. 182, 187–88, 93 S.Ct.

1455, 36 L.Ed.2d 142 (1973). Given that the Animal Welfare Act authorizes the Secretary to impose a fine and issue a cease and desist order for any violation of the Animal Welfare Act or any regulation promulgated thereunder,[1] our review in this case narrows to whether the relevant penalties are "without justification in fact."

### A. The Violations

In our prior opinion, we addressed the Secretary's finding that Hodgins Kennels committed fifty-eight violations and the Secretary's decision to impose a $13,500 fine, issue a cease and desist order, and suspend Hodgins Kennels' license. While we found that the record did not support the majority of violations or a license revocation, we noted that a small fine might be appropriate for a series of relatively minor violations. While we assume familiarity with our prior opinion, we discuss relevant portions of our prior decision below.

### 1. Recordkeeping

In our prior opinion we summarized the facts underlying the recordkeeping violations as follows:

> On January 18, 1994, Hodgins Kennels had rabbits and goats with no records. On March 1, 1994, Hodgins Kennels was cited for a pig with no record of acquisition. At the next inspection, April 5, 1994, the pig's record had been corrected, but there were five dogs and one cat on the records that were not present in the facility. On May 10 and June 23, 1994, the inspectors counted one fewer dog in the facility than the records showed.

1. Section 2149(b) provides in pertinent part: Any dealer ... subject to section 2141 of this title that violates any provision of this chapter or any rule, regulation, or standard promulgated by the Secretary thereunder, may be assessed a civil penalty by the Secretary of not more than $2,500 for each such violation, and the Secretary may also make an order that such person shall cease and desist from continuing such violation. 7 U.S.C. § 2149(b) (1999).

*Hodgins,* 2000 WL 1785733, at *17. We acknowledged that "a minimal fine might be supportable" for these violations. *Id.* On remand, the Secretary ruled that Hodgins Kennels committed five violations of the relevant recordkeeping provisions, 7 U.S.C. § 2140 and 9 C.F.R. § 2.75.

## 2. Structural Requirements

We recounted the Department's factual findings regarding structural violations, detailing:

> The November 16, 1993, inspection reportedly found some broken cement blocks, a door with a poorly-patched hole, gaps underneath two doors, and cracking concrete. The January 18, 1994 inspection allegedly disclosed that some wall panels were loose or missing, and that ceiling panels in the cat building needed repair. It also alleged that a door was falling apart. The March 1, 1994 inspection disclosed that the "main barn ceiling had missing panels" and that the roof was leaking in another building (citation omitted) .... The April 5, 1994, report stated that a barn ceiling was poorly repaired, "leaving exposed insulation and holes" .... The Hodgins were also cited several times [on September 13, 1994, and November 22, 1994] for bent or broken pen-wires, which (as Dr. Vaupel testified) is the natural and unavoidable result of keeping often-rowdy animals in cages.

*Id.* at *17–*18. As with the record keeping infractions, we ruled that the record did not support a license revocation, but accepted that "a minimal fine might be supportable." *Id.* at *18. On remand, the Secretary concluded that the record supported a finding of six violations of 9 C.F.R. § 3.1(a), the operative structural regulation.

## 3. Food Storage

In our prior opinion, we also discussed the two food storage violations presently at issue. We noted that during inspections on March 1 and September 13, 1993 the Department found (1) paint stored with the animal's feed and (2) the animal's feed stored in the same room as gasoline. We ruled that these violations were not willful and thus could not support a license revocation, but did not question the evidence regarding the actual violation. *Id.* The Secretary, on remand, concluded that the record supported a finding that Hodgins Kennels committed two violations of 9 C.F.R. § 3.1(e).

## 4. Space Requirements

With respect to the space requirement violation, we noted the Department's finding that Hodgins Kennels housed too many dogs in a pen together on January 18, 1994; nine dogs were in a pen that the inspectors said should have had only eight dogs. *Id.* at *23. Although we acknowledged that "a small fine might be supportable," the Secretary, citing the *de minimis* nature of the violation and the confusing methodology governing space calculation, did not impose a fine for this offense, an otherwise finable violation of 9 C.F.R. § 3.6(a)(2)(xi).

## 5. Primary Conveyance

Lastly, we detailed that Department inspectors found a McDonald's napkin and a can of WD–40 oil in the back of the van, and a McDonald's wrapper in between the two passenger seats during a November 22, 1994 inspection. *Id.* at *27. Like the space requirement violation, the Secretary also characterized the violation of 9 C.F.R. § 3.15 as *de minimis* and granted Hodgins Kennels' request that no fine be imposed.

### B. The $325 Fine

■ In light of the factual record, we cannot conclude that the Secretary's imposition of a $325 fine was "without justification in fact." The factual record provides sufficient evidence that Hodgins Kennels committed the fifteen violations at issue. While we agree with Hodgins Kennels' characterization that these are minor violations, the Secretary nevertheless has the statutory authority to remedy these violations. In fulfilling its statutory obligation to safeguard the "humane care and treatment" of animals for "use in research facilities," 7 U.S.C. § 2131, the Act authorizes the Secretary to remedy *any* violation, not only willful or particularly egregious violations. While these violations plainly could not support a license revocation, they adequately support the minimal $325 fine imposed by the Secretary.

### C. The Cease and Desist Order

As a practical matter, the Secretary's decision to impose a cease and desist order may have been a bit overzealous. The violations underlying this appeal are not only minor, but they occurred approximately eight years ago and have long since been corrected. Hodgins Kennels has apparently learned from these prior violations because in the past four years, it has achieved perfect compliance with the Animal Welfare Act rules and regulations. Thus, the Secretary probably did not need the additional firepower of a cease and desist order and the accompanying option to impose a fine for any future violation of the Act and for violation of the cease and desist order to ensure Hodgins Kennels' compliance. Accordingly, we share Hodgins Kennels' concern that a standing cease and desist order, coupled with the prospect of a double penalty for any violation of the Act, however trivial, might lead to an unduly severe and disproportionate punishment. Nevertheless, given the factual record and the language of section 2149(b), we cannot conclude that the Secretary's decision to issue a cease and desist order was either "unwarranted in law" or "without justification in fact." And while we are concerned about the potential limitless reach of the cease and desist order, we are ultimately confident that the Secretary, in addressing any future violation by Hodgins Kennels, will give due consideration to Hodgins Kennels' recent compliance and the relatively distant nature of the violations at issue in this case.

### III.

■ Hodgins Kennels also argues that the Secretary impermissibly assumed the role of Department advocate on remand. According to Hodgins Kennels, the Department's decision to submit only a Recommendation for Sanction and its failure to submit supplemental briefing forced the Secretary into performing the Department's advocacy function. In light of the extensive record in this case, including the Department's prior briefing, the Department's extensive factual findings and our prior opinion, we cannot conclude that the Department's decision to submit only a Recommendation for Sanctions transformed the Secretary from neutral arbiter to Department advocate. Therefore, we reject Hodgins Kennels' argument that the Secretary improperly assumed the role of advocate on remand.

### IV.

For the foregoing reasons, we AFFIRM the Secretary's order of a $325 fine and issuance of a cease and desist order.