BRYAN, Judge.
The Alabama State Board of Pharmacy (“the Board”) appeals from the judgment of the Houston Circuit Court reducing the Board’s punishment of pharmacist Bobby Dale Holmes. We reverse and remand with instructions.
On October 24, 2003, the Board filed an administrative complaint against Holmes and issued an emergency suspension of Holmes’s license to practice pharmacy. The complaint alleged that Holmes had violated various provisions of the Alabama Pharmacy Practice Act (“the PPA”), § 34-23-1 et seq., Ala.Code 1975; the Alabama Uniform Controlled Substances Act, § 20-2-1 et seq., Ala.Code 1975; and § 13A-12-211, Ala.Code 1975, a part of the Alabama Criminal Code.
The Board received evidence regarding the charges on January 20, 2004. On February 4, 2004, the Board entered an order finding that Holmes, while working as a pharmacist at a CVS pharmacy, had dispensed controlled substances to customer R.C. without a prescription; had not provided proper records of that dispensing; and had illegally dispensed, without valid prescriptions, large amounts of controlled substances to M.H. in both M.H.’s name and in the name of M.H.’s wife, J.H. The Board also found that Holmes, while working as supervising pharmacist of Southern Home Respiratory, Inc. (“Southern Home”), had allowed nonpharmacists to have keys to the pharmacy and to have access to the prescription area without the presence of a pharmacist; had failed to include upon prescriptions the prescription number, the date dispensed, and the initials of the person who compounded the prescription; had failed to properly store oxygen cylinders; and had “failed in his duties as supervising pharmacist.” The Board also found that Southern Home’s prescription area did not meet requisite size standards and that the Board’s audit of the CVS pharmacy at which Holmes worked had revealed a “very large shortage” of controlled substances. Based upon those factual findings, the Board found that Holmes had committed numerous statutory violations, including 16 violations of the PPA. Specifically, the order found that Holmes had violated § 34-23-33(2), (7), and (12), Ala.Code 1975; § 34-23-70(a), Ala.Code 1975; § 34-23-71, Ala. Code 1975; § 34-23-131(a), Ala.Code 1975; § 20-2-54(a)(4), Ala.Code 1975; § 20-2-58(a), (d)(l)-(2), and (e), Ala.Code *205 1975; § 20-2-71(a)(l) ■ and (3), Ala.Code 1975; and § 13A-12-211, Ala.Code 1975.
Based upon those findings, the Board’s order revoked Holmes’s license to practice pharmacy in Alabama and levied against him an administrative fine of $16,000. Holmes subsequently appealed the Board’s order to the circuit court. On appeal to the circuit court, Holmes argued, among other things, that the Board’s punishment was unreasonable, ■ arbitrary, ■ and capricious. On June 24, 2004, the circuit court entered a judgment that reinstated Holmes’s license to practice pharmacy, placed him on probation for a period of no more than five years, and reduced his administrative fine to $5,000. In support of its decision to reduce Holmes’s punishment, the circuit court cited a recent order of the Board in which a pharmacist who had dispensed unauthorized prescriptions for controlled substances had received probation and a $8,250 administrative fine. The Board timely appealed the circuit court’s judgment to this court.
The following additional factual background is pertinent to our review. Evidence introduced at the Board hearing showed that, during a roughly 11-month period in 2002 and 2003, Holmes dispensed a combined average of 16.68 hydrocodone and OxyContin narcotic pain-relief. pills per day to M.H. Evidence also revealed that, during roughly the same period, Holmes -dispensed a combined average of 17.76 hydrocodone and OxyContin pills per day in J.H.’s name.
According to CVS records, M.H.’s and J.H.’s prescriptions for hydrocodone and OxyContin were prescribed by N.H., a psychiatrist. N.H. testified that he did not authorize any hydrocodone or OxyContin prescriptions for M.H., who is the stepfather of N.H.’s wife. N.H. further testified that neither M.H. nor J.H. had ever been a patient of his. He testified that, although he may have written a few prescriptions for J.H.,-he did not-write or authorize “the vast majority” of J.H.’s hydrocodone and OxyContin prescriptions attributed to him.
J.H. testified that, although there were numerous hydrocodone and OxyContin prescriptions in her name, she never had possession of those prescriptions, she never filled those prescriptions at CVS, and she never received the hydrocodone or Ox-yContin pills allegedly prescribed by N.H. She stated that her husband M.H. had told her that Holmes had put prescriptions in her name “to get [them] out of the store.” J.H. further testified that her husband had told her that he was paying Holmes for pain relievers. She testified that M.H. had recently entered rehabilitation treatment for drug addiction and that OxyCon-tin was one of his drugs of choice. According to J.H., Holmes never contacted her about the numerous prescriptions for pain relievers being filled in her name. She testified that she believed that Holmes knew of her husband’s drug addiction.
Holmes testified that it is inappropriate to dispense to an individual an average of 17 pain relievers per day, but he noted that “he never sat down and divided it out ... to come up with those figures.” Holmes testified that he could not remember ever asking N.H. about the numerous prescriptions for pain relievers that he had supposedly authorized for M.H. and J.H.
Section 41-22-20(k), Ala.Code 1975, controls judicial review of agency decisions. In pertinent part, it provides:
- “(k)'Except where judicial review is by trial de novo, thé agency order shall be taken as -prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.... The court may re *206 verse or modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
Our supreme court has stated:
“This Court has further defined the standard of review of an agency ruling in Alabama as follows:
“ ‘ “Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.” ’ ”
Ex parte Medical Licensure Comm’n of Alabama, 897 So.2d 1093, 1096-97 (Ala. 2004) (quoting Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012 (Ala.2001), quoting in turn Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ. App.1989)). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). “A presumption of correctness attaches to the decision of an administrative agency due to its recognized expertise in a specific, specialized area.” Hall v. Alabama Alcoholic Beverage Control Bd., 631 So.2d 1047, 1048 (AIa.Civ.App.1993). Further, this court reviews a trial court’s judgment without a presumption of correctness because the trial court is in no better position to review an agency’s decision than this court. Clark v. Fancher, 662 So.2d 258, 261 (Ala. Civ.App.1994).
On appeal, the only issue before this court is whether the Board’s discipline of Holmes — revoking his license to practice pharmacy and fining him $16,000 — -is supported by substantial evidence, is reasonable, and is within the Board’s statutory and constitutional powers. Holmes argues, as he did before the circuit court, that the punishment imposed by the Board is arbitrary, capricious, and unreasonable because, he says, his punishment is more severe than the punishment imposed by the Board in a similar case. However, “[t]he employment of a sanction within the authority of an administrative agency is ... not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases.” Butz v. Glover Livestock Comm’n Co., 411 U.S. 182, 187, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973). See also Lowry v. SEC, 340 F.3d 501, 507 (8th Cir.2003) (rejecting appellant’s argument that an administrative agency’s punishment was unreasonable merely because it was disproportionate to punishment in other cases); and Newell *207 Recycling Co. v. ERA, 231 F.3d 204, 210 (5th Cir.2000) (stating that an administrative agency’s punishment need not resemble punishment assessed in similar cases).
Section 34-23-92(12), Ala.Code 1975, authorizes the Board “to investigate alleged violations of [the PPA] ... and conduct hearings to revoke, suspend or probate any license or permit granted by the [BJoard ... and to invoke penalties not to exceed the sum of $1,000.00 for each violation(s).... ” The Board has the statutory authority to revoke Holmes’s license and to fine him $16,000, i.e., $1,000 for each violation of the PPA. The statute does not require the Board to impose identical punishment in every case. The Board’s punishment of Holmes, although harsh, was supported by substantial evidence, was reasonable, and was within its statutory and constitutional powers. The evidence before the Board reveals that Holmes illegally dispensed copious amounts of controlled substances. The record further reveals several instances of irresponsible, illegal conduct by Holmes as a pharmacist and supervising pharmacist. The Board acted within its discretion by revoking Holmes’s license and fining him $16,000.
Accordingly, we reverse the circuit court’s judgment, and we remand the case to the circuit court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.