UNITED STATES of America and State of New York, Plaintiffs,

v.

COUNTY OF NASSAU and Nassau County Department of Public Works, Defendants.

No. CV 89–2532.

United States District Court, E.D. New York.

Oct. 17, 1990.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., Deborah B. Zwany,

Asst. U.S. Atty., Richard B. Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Joseph Hurley, Sr. Atty., Environmental Enforcement Section, Charles E. Hoffmann, Asst. Branch Chief, Richard Weisberg, Asst. Regional Counsel, U.S. E.P.A., of counsel), Robert Abrams, Atty. Gen., State of N.Y., New York City, Ann L. Goldweber, Asst. Atty. Gen. (Richard Williams, New York State Dept., Environmental Conservation, of counsel), for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Leslie Gordon Fagen, John N. Gevertz, of counsel), County of Nassau, Mineola, N.Y. (Owen B. Walsh, of counsel), for defendants.

### MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiffs, the United States of America and the State of New York ("Regulators"), move either for an order finding the defendants, County of Nassau and Nassau County Department of Public Works ("Nassau"), in contempt of provisions of the Consent Decree and Enforcement Agreement ("Decree"), or for modification of the Decree. Nassau cross-moves for an order to compel the payment of funds from a trust account established pursuant to paragraph X.C of the Decree.

The Decree outlines the steps Nassau must take to cease ocean disposal of 50 percent of its sewage sludge by June 30, 1991, and all dumping of sewage sludge by December 31, 1991, and further requires a long-term alternative system of sludge management to be in operation by December 31, 1994. The history and background leading to the Decree is detailed in *United States v. County of Nassau*, 733 F.Supp. 563, 564–65 (E.D.N.Y.1990), *aff'd*, 907 F.2d 397 (2d Cir.1990) (*Nassau I*). An earlier motion by Nassau to modify the Decree was denied. *Id.* at 570.[1]

It is clear as a matter of law that Nassau currently is violating paragraphs V.4, V.5, and V.6 of the Decree. These provisions expressly require Nassau to award a contract for sludge dewatering equipment and facilities by May 15, 1990, and commence on-site construction of all sludge dewatering facilities by June 30, 1990. Nassau has not complied with these milestones agreed upon in the Decree. *County of Nassau Department of Public Works Consent Decree and Enforcement Agreement Monthly Status and Progress Report Number 12* at 1–2 (August 1990) and accompanying cover letter from Steven Fangmann dated September 17, 1990; 9/17/90 Hearing Tr. at 11.

Nassau's failure to comply with provisions in paragraph V of the Decree has resulted in the accrual and payment of stipulated penalties outlined in paragraph IX of the Decree. Nassau has already paid more than one million dollars for violating provisions of the Decree and currently pays about $40,000 each day for continuing violations. Nassau claims that it either may comply with provisions in paragraph V or be relieved of these obligations by paying the stipulated penalties. This construction of the Decree is not correct. The payment of stipulated penalties does not excuse Nassau from the affirmative requirements of paragraphs IV, V, VI, VII, or VIII.

Nassau claims that a recently disclosed proposal to contract with the Passaic Valley Sewerage Commissioners ("PVSC") is a better way to dewater and dispose of the county sewage than constructing dewatering facilities. While Nassau is free to pursue its own agenda, this is not an alternative to the requirements set forth in paragraph V of the Decree. Any interim disposal means other than awarding contracts and commencing construction of sludge dewatering facilities pursuant to paragraph V falls outside of the Decree and does not constitute compliance with it.

The Consent Decree, a judicial order, already requires Nassau to specifically per-

---

**1.** After the Regulators brought this motion on September 17, 1990, referred to as *Nassau II*, Nassau, on October 15, 1990, again moved for modification of the Decree. *United States v. County of Nassau*, 749 F.Supp. 463 (E.D.N.Y. 1990) (*Nassau III*).

form the acts enumerated in paragraph V. An additional directive by the court ordering Nassau to comply with paragraph V would be duplicative and therefore is not appropriate. The Decree itself specifically establishes the consequences of noncompliance with paragraphs IV, V, VI, VII or VIII: the payment of the stipulated penalties by Nassau. When the Decree was negotiated and entered into it was foreseeable that Nassau might not comply with the agreed upon milestones; after all, noncompliance is what the stipulated penalties address.

### The Contempt Action

■ "A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989), citing *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.) (*per curiam*), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

■ The Decree is clear and the proof, at minimum, is clear and convincing: Nassau currently is violating paragraphs V.4, V.5, and V.6. It is equally clear, however, that Nassau is paying the stipulated penalties the Decree imposes for these violations.[2] Because Nassau is complying with the stipulated penalties outlined in the Decree, civil contempt is not appropriate at this time.[3] The court reiterates that paying the stipulated penalties is no substitute for complying with the requirements of paragraph V.

As this court has said before, if Nassau pays the stipulated penalties until December 31, 1991, and then does not stop dumping one-hundred percent of its sewage sludge into the ocean, an injunction might be issued enjoining further ocean dumping, pursuant to the Ocean Dumping Ban Act of 1988. (5/18/90 Hearing Tr. at 17).

The final enforcement issue concerns the construction of the stipulated penalties provision in paragraph IX of the Decree: "The stipulated penalties ... shall begin to accrue at the close of business on the day that performance is due or non-compliance occurs, and shall continue to accrue through the final day of correction of the non-compliance." (¶ IX.C). Nassau claims that no penalty is owed for the first day since the stipulated penalties do not begin to accrue until the *close of business* on the first day of non-compliance. Nassau offers in support of this interpretation Fed.R. Civ.P. 6(a), which indicates that the first day would be excluded.

The Regulators contend that since the penalties do not begin to accrue until the close of business, this allows Nassau up until approximately 5:00 p.m. or 6:00 p.m. to comply; if however, Nassau has not complied by the close of business, penalties accrue for that first day.

■ Fed.R.Civ.P. 6(a) does not control matters of timing in all circumstances. Rule 6(a) does not apply to contracts, *J. Aron & Co. v. S/S Olga Jacob*, 527 F.2d 416, 417 (5th Cir.1976), nor does it always apply to the time period from which damages are computed. *Miller v. Daybrook–Ottawa Corp.*, 291 F.Supp. 896, 905 (N.D. Ohio 1968). Because consent decrees are construed as contracts, *Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 38 (2d Cir.1989), the explicit language of the decree is given its plain meaning and is afforded great weight. *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.

2. Discussion of what day the stipulated penalties begin, and whether Nassau is in violation of nonpayment for the first day of non-compliance is discussed below.

3. An evidentiary hearing is not required when considering civil contempt sanctions "where

there are no material facts in dispute." *New York State Nat'l Org. for Women v. Terry*, 697 F.Supp. 1324, 1330 n. 6 (S.D.N.Y.1988), *modified other parts and aff'd*, 886 F.2d 1339 (2d Cir. 1989). This is especially true here because sanctions for contempt now are not being awarded.

1985). Fed.R.Civ.P. 6(a) does not govern the construction of the stipulated penalties provision in the Decree. Instead, the plain meaning of the text guides our interpretation. The explicit language of the Decree supports the Regulators' position. This court finds that Nassau shall pay the proscribed penalties for the first day of non-compliance, the sum of $40,100.

### The Modification Action

■ The Regulators also urge the court to modify the stipulated penalties provisions of the Decree by increasing the fines for non-compliance. As this court has comprehensively discussed before, *Nassau I*, 733 F.Supp. at 565–69, "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).

The Decree explicitly states that "[i]f the defendant fails to comply with any applicable requirements of paragraph IV, V, VI, or VII of this Decree and Agreement, the defendant shall pay stipulated penalties in the following amounts ..." (¶ IX.A). A violation of the Decree by Nassau was foreseeable; after all, this is why the parties included a stipulated penalties provision. The Decree contemplated the type of breach that has presently occurred and provided an enumerated consequence for it. The Regulators fail to convince this court that "new and unforeseen conditions" have arisen that now justify modification of the Decree.[4]

Even if the Regulators did convince this court that modification of the Decree was necessary, it is doubtful that the stipulated penalties would be increased. The agreed upon penalties provide that if paragraphs IV, V, VI, or VII are violated, an incrementally increasing penalty accrues: $1,000 per day for days 1–30 of non-compliance, $5,000 per day for days 31–60 of non-compliance,

and $10,000 per day beyond 60 days of non-compliance. (¶ IX.A).

■ We believe that any additional penalties over and above what the parties have agreed upon would be considered punitive damages. After carefully considering the common-law tradition, the United States Supreme Court explicitly stated that the "[j]udicial disinclination to award punitive damages against a municipality has persisted to the present day in a vast majority of jurisdictions." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260, 101 S.Ct. 2748, 2756, 69 L.Ed.2d 616 (1981). New York law follows the majority of jurisdictions. *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104 (1982). Punitive damages are prohibited because the taxpaying citizens would be punished for the acts of public officials. *Fact Concerts*, 453 U.S. at 261–62, 101 S.Ct. at 2756–57.

The Regulators characterize any additional penalties as coercive, designed to encourage future compliance and remedy past non-compliance, *Matter of Dickinson*, 763 F.2d 84, 87 (2d Cir.1985) citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966), rather than simply to punish. While the purpose of damages that either punish or coerce may differ, neither are compensatory. Additional fines, regardless of the nomenclature, are exemplary penalties that burden the taxpayers. This court, in its discretion, declines to modify the Decree and refuses to impose upon the taxpayers any additional monetary penalties for the violations committed by Nassau County officials.

### The Trust Account

■ Nassau cross-moves for an order from this court requiring the United States of America and the Environmental Protection Agency ("EPA") to withdraw their direction to the Trustee to withhold disbursements to Nassau without further authorization from the EPA or the court. The

---

**4.** An evidentiary hearing is not required when the court refuses to modify a consent decree. *Delaware Valley Citizens' Council v. Common-* *wealth of Pennsylvania*, 674 F.2d 976, 981 (3d Cir.1982).

Decree, pursuant to 33 U.S.C. § 1414b, establishes a trust account "for the payment and use of that portion of the fees and penalties established by the Ban Act that are to be deposited in this trust account." (¶ X.C). Nassau may apply for the repayment of fees and penalties held by the Trustee "only for projects which will identify, develop, and implement ... an alternative system, and any interim measures, for the management of sewage sludge ..." 33 U.S.C. § 1414b(e)(2)(B).

EPA approved Nassau's scope of work request for the Bay Park dewatering building design services, pursuant to paragraph X.J of the Decree, on October 22, 1989. Nassau failed to award contracts for sludge dewatering equipment and facilities by May 15, 1990, and failed to commence on-site construction of the dewatering facilities by June 30, 1990, steps required by paragraph V.4–V.6 of the Decree. Nassau still has not complied with these provisions.

The EPA, on June 22, 1990, wrote a letter to the Trustee, explaining that "circumstances have arisen ... which in our view have negated Nassau County's entitlement to this money [held in the trust account]. Accordingly, we are withdrawing our approval, and ... directing you not to make the requested disbursement and any future disbursements to Nassau County until such time as you receive authorization either from this office or the Court." A second letter, written on July 5, 1990 by the United States Attorney on behalf of the EPA, stated that EPA's decision was in accordance with sections 6 and 17 of the Trust Agreement and paragraph X.G of the Consent Decree.

The Trust Agreement provides that "the EPA Regional Administrator may direct the Trustee to stop further payments to the grantor [Nassau] by withdrawing approval of the scope of work and payment schedule required under Section 6 on the grounds set forth in Paragraph X.G of the Consent Decree. The EPA Regional Administrator shall provide the Trustee with a letter stating that the direction to stop further payments is made in accordance with Paragraph X.G of the Consent Decree." (§ 17).

Paragraph X.G of the Decree provides in the event of "defendant's failure to use amounts withdrawn or received from the account in accordance with Section 1414(b)(e) of the MPRSA [quoted above] and this Decree and Agreement, EPA may upon finding such a failure to have occurred and upon fifteen business days notice to defendant direct the trustee of the trust account to pay the balance of the amounts in the trust account to the State ..." The EPA has not yet directed that the balance of the trust account be paid to the state; it simply has directed the Trustee to withhold disbursements until further notice.

On October 3, 1990, the EPA Regional Administrator authorized the Trustee to disburse $770,447 from the trust for activities other than for the Bay Park dewatering building design services. The United States and the EPA argue that to reimburse Nassau only for the design expenses of a dewatering plant that they refuse to build violates 33 U.S.C. § 1414b(e)(2)(B), since Nassau will not actually implement measures by awarding contracts or commencing construction of the plant.

The EPA has made a policy decision to withdraw approval of disbursements for the Bay Park dewatering design services, and asserts that it has complied with the requirements of applicable statutes, the trust agreement, and the Decree. Nassau requests that this court review the EPA Regional Administrator's decision. "[J]udicial review of the imposition of sanctions by an administrator charged by Congress with the implementation of a statutory policy is severely limited; the only issue is whether the administrator has made 'an allowable judgment in [his] choice of the remedy.'" *Sokoloff v. Saxbe*, 501 F.2d 571, 576 (2d Cir.1974), quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 189, 93 S.Ct. 1455, 1459, 36 L.Ed.2d 142 (1973). We decline to displace the judgment of the EPA Regional Administrator; his policy decision and remedy appear consistent with the law.

Further, this court is entrusted to enforce the terms and conditions of the Con-

sent Decree. (¶ XX). The Decree contains a specific schedule and set of provisions to achieve its essential goal: ceasing ocean dumping of sewage by December 31, 1991. Attaining this goal will be best served by denying at this time Nassau's cross-motion for the reimbursement of trust funds for the Bay Park dewatering building design services. An order to the contrary, at best, might be interpreted as a reward for inaction; at worst, it might be seen as a reward for abandonment. The United States and the EPA agree that if Nassau complies with the Decree and awards contracts for and commences construction of the Bay Park dewatering facilities, then Nassau would be entitled to reimbursement for the design costs. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross–Motion at 16).

The Regulators' motion for an order finding Nassau in contempt or for modification of the Decree is denied, except Nassau must pay the stipulated penalties for the first day of non-compliance. Nassau's cross-motion for an order to disburse trust funds is denied.

SO ORDERED.

Andrew J. Maloney, U.S. Atty., E.D. New York, Brooklyn, N.Y., Deborah B. Zwany, Asst. U.S. Atty., Richard B. Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Joseph Hurley, Sr. Atty., Environmental Enforcement Section, Charles E. Hoffmann, Asst. Branch Chief, Richard Weisberg, Asst. Regional Counsel, U.S. E.P.A., of counsel), Robert Abrams, Atty. Gen., State of N.Y., New York City, Ann L. Goldweber, Asst. Atty. Gen. (Richard Williams, New York State Dept. of Environmental Conservation, of counsel), for plaintiffs.