**UNITED STATES of America and State of New York, Plaintiffs,**

v.

**COUNTY OF NASSAU and Nassau County Department of Public Works, Defendants.**

**No. CV 89–2532.**

United States District Court, E.D. New York.

Oct. 17, 1990.

Andrew J. Maloney, U.S. Atty., E.D. New York, Brooklyn, N.Y., Deborah B. Zwany, Asst. U.S. Atty., Richard B. Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Joseph Hurley, Sr. Atty., Environmental Enforcement Section, Charles E. Hoffmann, Asst. Branch Chief, Richard Weisberg, Asst. Regional Counsel, U.S. E.P.A., of counsel), Robert Abrams, Atty. Gen., State of N.Y., New York City, Ann L. Goldweber, Asst. Atty. Gen. (Richard Williams, New York State Dept. of Environmental Conservation, of counsel), for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Leslie Gordon Fagen, John N. Gevertz, of counsel), County of Nassau, Mineola, N.Y. (Owen B. Walsh, of counsel), for defendants.

**MEMORANDUM OF DECISION AND ORDER**

MISHLER, District Judge.

Defendants, County of Nassau and the Nassau County Department of Public Works ("Nassau"), move to modify the August 2, 1989 Consent Decree and Enforcement Agreement ("Decree") by replacing

paragraphs V.4, V.5, and V.6, which require Nassau to award contracts for and commence construction of sewage sludge dewatering equipment and facilities, with a paragraph permitting Nassau to contract with the Passaic Valley Sewerage Commissioners ("PVSC") for Nassau's sludge dewatering. Further, Nassau asks to be relieved of accrued but currently unpaid stipulated penalties for violations of the Decree.

The Decree, a negotiated agreement between the United States of America and the State of New York (the "Regulators") and Nassau, outlines a detailed sewage sludge management plan to assure Nassau's compliance with the Ocean Dumping Ban Act of 1988. The Decree requires that Nassau cease ocean disposal of 50 percent of its sewage sludge by June 30, 1991 and end all dumping of sewage sludge by December 31, 1991. (Decree Preamble and ¶ V.7–V.8). The Decree provides a specific method of terminating ocean dumping: "Award contract for sludge dewatering equipment by May 15, 1990" (¶ V.4); "Award all contracts necessary for sludge dewatering facilities by May 15, 1990" (¶ V.5); "Commence on-site construction of all sludge dewatering facilities by June 30, 1990" (¶ V.6); and "Place into operation [this] sludge dewatering equipment ..." (¶ V.7–V.8). Nassau currently has failed to comply with paragraphs V.4, V.5, and V.6 of the Decree.

Several months ago, Nassau made a similar motion for modification. This motion was denied. *United States v. County of Nassau*, 733 F.Supp. 563 (E.D.N.Y.1990), *aff'd*, 907 F.2d 397 (2d Cir.1990) (hereinafter *Nassau I*). On September 17, 1990, the Regulators moved either for an order finding Nassau in contempt of the Decree or for modification of the Decree. Again we declined to modify the Decree. *United States v. County of Nassau*, 749 F.Supp. 458 (E.D.N.Y.1990) (hereinafter *Nassau II*). Because the issues raised in this motion [1] have been discussed at length before, we assume familiarity with this court's previous opinions.

1. This opinion may be referred to as *Nassau III*.

As this court has quoted in *Nassau I* and *Nassau II*: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). The party seeking modification bears the burden of clearly showing that modification "'is essential to attaining the goal of the decree.'" *Kozlowski v. Coughlin*, 871 F.2d 241, 247 (2d Cir.1989) (citations omitted). Further, the modification must be in the public interest, since the Decree was adopted to enforce a statute. *United States v. Wheeling–Pittsburgh Steel Corporation*, 866 F.2d 57, 61–62 (3d Cir.1988).

The possibility of contracting with a third party for sewage sludge dewatering was just as conceivable when the Decree was negotiated and signed as it is now. While Nassau may not have contemplated using PVSC for sludge disposal, it was foreseeable that Nassau might contract with another party at a remote site for sludge dewatering. Nassau failed to include this option in the Decree. Instead, the Decree unequivocally requires Nassau to award contracts for, commence construction of, and place into operation sludge dewatering equipment. (¶ V.4–V.8).

The essential purpose and goal of the Decree is clear: to end all ocean dumping by December 31, 1991. *Nassau I*, 733 F.Supp. at 568. Nassau has failed to demonstrate how its proposed modification will advance this critical goal. In fact, substantial evidence suggests serious problems exist with the proposed PVSC contract. First, PVSC may only accept other municipalities' sludge after it complies with New Jersey Department of Environmental Protection ("NJDEP") regulations restricting the airborne emissions of volatile organic compounds by PVSC's Zimpro dewatering equipment. (Fangmann 10/5/90 Aff. ¶ 13). Installation of equipment controlling emissions is expected by October 22, 1991.

NJDEP, however, requires three to four months for emissions testing. (*Id.* at ¶ 14). Testing may indicate noncompliance; then additional time would be required to correct and retest emissions levels. It is unclear that PVSC will be able to accept Nassau sludge by December 31, 1991.

Further, the proposed contract between Nassau and PVSC states that Nassau "COUNTY agrees that it will not seek indemnification, contribution or damages from PVSC as a result of COUNTY'S failure to meet the December 31, 1991 statutory deadline for the termination of ocean sludge disposal or any other milestone in the Consent Decree ..." (¶ 21). Nassau recognizes that the PVSC plan may not meet the December deadline; yet Nassau provides no contingency if delay prevents PVSC from accepting Nassau sludge on time. This court cannot fathom how Nassau's proposed modification advances, let alone is essential to, the purpose of the Decree: ceasing ocean dumping by December 31, 1991.

Even if we assume that PVSC can process Nassau sludge by December 31, 1991, it is unclear that the proposed contract with PVSC will provide for reliable and continuous sludge dewatering. In the proposed contract, "PVSC agrees to dewater COUNTY sludge by utilizing centrifuges at its dewatering facilities unless equipment failure or the planned maintenance shutdown of the Zimpro System necessitates the total usage by PVSC of the centrifuge equipment at its dewatering facility for purposes of dewatering its own sludge." (¶ 9). This restriction suggests that the PVSC proposal contains serious uncertainties.

The United States of America raises an additional problem with Nassau's motion for modification. New Jersey law provides that "The Passaic valley sewerage commissioners are hereby given the right, power and authority to lease unto any two or more municipalities *in this state*, organized in a joint meeting, ... and shall further have the right, power and authority to enter into a contract or contracts with such municipalities, organized in joint meeting as aforesaid, for the disposal of sludge by barge to sea or otherwise." N.J.S.A. 58:14–34. (emphasis supplied). Because Nassau County is not a municipality in the State of New Jersey, the United States argues that a disgruntled Passaic Valley resident might bring an action to enjoin or invalidate the contract between PVSC and Nassau. Nassau and PVSC apparently recognize this problem, since the proposed contract provides that in the event "The Agreement is found to be an ultra vires action of either of the parties ... [t]he parties a[g]ree to pay for any work undertaken or services rendered or supplied in furtherence [sic] of this Agreement and neither shall raise the ultra vires nature of the entering into the agreement ... as a defense to that payment." (¶ 24). This provision casts further uncertainty over the PVSC proposal.

The final issue we must address is whether Nassau's request for modification is in the public interest. The Ocean Dumping Ban Act protects the public from the adverse consequences of dumping sewage sludge into the ocean. *Nassau I,* 733 F.Supp. at 564–67. Nassau, on the other hand, asserts that the "public interest" to be protected is the community of Bay Park, the location Nassau selected as the site for a dewatering plant it now seeks to avoid building. Nassau contends that trucks removing dewatered sludge would result in traffic and safety problems. First, Nassau has identified the wrong public interest this court must consider. Second, this court already rejected Nassau's safety argument. *Nassau I,* 733 F.Supp. at 567, 570. Moreover, Nassau commissioned the firm of Parsons, Brinckerhoff, Quade and Douglas, Inc. to investigate traffic conditions. "Parsons concluded in its February, 1990 Report that the additional traffic that will be generated by the trucks hauling dewatered sludge from the dewatering building to a landfill off of Long Island would not have a significant impact upon traffic flow and the operation of key intersections. The key intersections would continue to operate at acceptable levels of service as measured by the volume to capacity ratios." *County of Nassau Department of Public Works Final Environmental Impact Statement* at 299 (April 1990). Nassau again has failed to demonstrate that the public interest, or

even Bay Park residents' interest, justify modification of the Decree.

The decision whether to modify the Decree is within the wide discretion of this court. *System Federation v. Wright*, 364 U.S. 642, 648, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). Nassau has failed to demonstrate that the modification advances, let alone is essential to, attaining the purpose of the Decree. Nassau also has failed to show any new or unforeseen conditions that would require modification of the decree, much less "a clear showing of grievous wrong evoked by new and unforeseen conditions." *Swift*, 286 U.S. at 119, 52 S.Ct. at 464. *See Nassau I*, 733 F.Supp. at 570. Finally, Nassau's proposed modification of the Decree is not in the public interest. Serious problems exist with the PVSC plan, and it is wholly speculative that they will be resolved in time for PVSC to accept Nassau sludge by the December 31, 1991 deadline.

Nassau's motion for modification of the Decree is denied. Nassau must continue to pay the stipulated penalties required by the Decree until Nassau complies with the terms of the Decree.[2]

SO ORDERED.

---

2. As this court has said before, Nassau is free to pursue its own agenda with PVSC or anyone else; however, this does not excuse Nassau from complying with paragraph V of the Decree or paying the stipulated penalties for noncompliance. *Nassau II*, 749 F.Supp. at 459–60.